IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

-----------------------------------------------------------------X

SHERYL WULTZ, et al.

PLAINTIFFS,

vs.

THE ISLAMIC REPUBLIC OF IRAN, et al.

DEFENDANTS.

Civil Case No. 1:08-cv-01460 (RCL)
(ECF Case)

-----------------------------------------------------------------X

## DECLARATION OF PETER GAD NASCHITZ

I, Peter Gad Naschitz, hereby declare:

1.      I am an Israeli Advocate and Notary, of 5 Tuval Street, Tel Aviv, Israel. I was admitted to the Israel Bar in 1957 and have practiced law continuously since that time. I am the senior partner of Naschitz, Brandes & Co., a leading Israeli law firm comprising ninety Israeli advocates engaged in a diversified civil and commercial law practice. My academic training includes a Bachelor of Laws (LL.B) degree awarded by the Tel Aviv School of Law and Economics, affiliated with the Hebrew University of Jerusalem, and a Master of Laws (LL.M) from Tel Aviv University. I have been affiliated as a lecturer with the faculties of law at Hebrew University in Jerusalem, Tel Aviv University, and Bar Ilan University for many years. Since admission to the Bar I have appeared continually before the courts of Israel on all levels, including a substantial number of cases involving tort claims. I have been Chairman of the Tort Committee of the Israel Bar, and serve as President of the Israeli Chapter of AIDA – the International Association of Insurance Law – and International Vice President of AIDA. I have represented parties to transnational disputes, acted as an arbitrator in disputes, participated in

commissions of inquiry at various levels, and testified before committees of the Knesset (Israeli legislature) as an expert on matters of civil law legislation.

2. My opinion has been requested on the position of Israeli law in respect of the Israeli law causes of action that are pleaded in the Complaint for Damages dated August 19, 2008 filed in the United States District Court for the District of Columbia in the matter of *Wultz v. Islamic Republic of Iran* ("Complaint"). For the purpose of this Opinion I have reviewed only the text of the Complaint and no other documents have been presented to me for consideration. I have not investigated, and I express no opinion with respect to, the factual allegations in the Complaint. The causes of action alleged in the Complaint under the Law of Israel are:

i) Negligence (Complaint, ¶¶ 120-34);

ii) Breach of Statutory Duty (Complaint, ¶¶ 135-44); and

iii) Vicarious Liability (Complaint, ¶¶ 145-50).

I will consider each of these causes of action in turn. The captions in my Opinion are for the sake of reading convenience only.

### Definition of Negligence

3. Sections 35 and 36 of the Civil Wrongs Ordinance [New Version] ("Civil Wrongs Ordinance") define negligence as follows:[1]

> **35. Where a person does some act which in the circumstances a reasonable prudent person would not do, or fails to do some act which in the circumstances such a person would do, or fails to use such skill or take such care in the exercise of any occupation as a reasonable prudent**

---

[1] Israeli statutes are enacted in Hebrew, and only the Hebrew version is binding. Unless stated otherwise, the translations of statutes herein into English are taken from the Laws of the State of Israel, Authorized Translation from Hebrew prepared at the Ministry of Justice. The English version of the Civil Wrongs Ordinance, in its entirety, is annexed to this Opinion and marked "A." The Civil Wrongs Ordinance has been amended subsequent to the preparation of such translation, in a manner that is not material to the subject matter of this Opinion.

> person qualified to exercise such occupation would in the circumstances use or take, then such act or failure constitutes carelessness and a person's carelessness as aforesaid in relation to another person to whom he owes a duty in the circumstances not to act as he did constitutes negligence. Any person who causes damage to any person by his negligence commits a civil wrong.
>
> 36.  For the purpose of section 35, every person owes a duty to all persons whom, and to the owner of any property which, a reasonable person ought in the circumstances to have contemplated as likely in the usual course of things to be affected by an act, or failure to do an act, envisaged by that section.

4. The Civil Wrongs Ordinance provides the general scheme of the principle of negligence; however, the Israeli courts, as the judicial branch of the State of Israel, are charged with the interpretation and administration of the Civil Wrongs Ordinance.[2] Pursuant to Section 21(b) of the Basic Law: The Judiciary, "a ruling of law by the Supreme Court is binding on all courts." Thus, to ascertain the proper interpretation of the Civil Wrongs Ordinance under Israeli law, one must analyze the rulings of the Supreme Court.

5. The rulings of the Supreme Court have defined the civil wrong (tort) of negligence in Sections 35 and 36 of the Civil Wrongs Ordinance to encompass the following cumulative elements:

   i) a duty of care on the part of the defendant toward the injured party;

---

[2] Section 1 of the Civil Wrongs Ordinance, as originally enacted, provided that the Civil Wrongs Ordinance and the expressions therein should be construed in accordance with English law. This provision was repealed by subsequent legislation establishing the independence of Israeli law from English law, firstly by the Law and Administration Ordinance, 5708-1948 as amended in 1972, repealing the binding effect of any "such provision of a Law as requires such Law or any expression therein to be interpreted in accordance with English law or with principles of legal interpretation obtaining in England." The repeal was completed by the Foundations of Law, 5740-1980. The Interpretation Ordinance that is mentioned in Section 1 of the Civil Wrongs Ordinance has largely been repealed by the Interpretation Law, 5741-1981; however, in consequence of Section 1 of the latter statute, the terms used in the Civil Wrongs Ordinance, as an enactment that preceded the Interpretation Law, still are to be construed according to the Interpretation Ordinance.

ii)   a breach of such duty of care by the defendant, by act or omission (referred to also as a person's "carelessness" in Section 35); and

iii)   a causal connection between the breach of the duty of care and the damage incurred, such damage being of the type that is likely to be caused by the breach of duty in the usual course of events.[3]

**Duty of Care**

6.   Whether the defendant Bank of China owed a duty of care to the Plaintiffs is to be determined primarily by application of the test of foreseeability provided by the framework provision of Section 36 of the Civil Wrongs Ordinance. The duty of care comprises two aspects, as reviewed in the leading case of **Vaknin**, 122 *et seq.*, 138:

<u>First, the notional duty</u> – *i.e.* is there a duty of care in respect of a certain generic risk or type of harm, as between classes of actors and classes of injured parties?

<u>Second, the duty of care in fact</u> – *i.e.* did there exist a duty of care between the specific defendant and the specific injured party, according to the circumstances of the specific event?

> **In the context of the notional duty of care, the question is an abstract one. It deals with entire categories of actors (manufacturers, employers, drivers, teachers), and of injured parties (consumers, pedestrians, pupils), of damage (physical, pecuniary), and of actions (act, omission). The examination is disconnected from the concrete facts of the specific event. (**<u>Vaknin</u>**, 125).[4]**
>
> **The law recognizes the existence of a notional duty of care in relationships between the plaintiff and the tortfeasor. That is a necessary, though not sufficient, condition of the existence of liability in**

---

[3] The leading statements of the law are in Civil Appeal (C.A.) 145/80 **Vaknin v. Beit Shemesh Local Council**, 37(1) P.D. 113 (1982) ("<u>Vaknin</u>"), per Justice Aharon Barak (later President of the Supreme Court).

[4] See translations of judgments attached as Exhibits to the Declaration of Walter P. Loughlin.

**the tort of negligence. There still arises the additional question – whether there is a concrete duty of care between the specific tortfeasor and the specific injured party, under the particular circumstances of the case, for the specific damage caused.** (*Id.*).

7. When applying the foreseeability standard in the context of the duty of care, the law of negligence distinguishes between technical foreseeability – that which a person <u>can</u> foresee – and normative foreseeability – that which a person <u>ought to</u> foresee. It has been said that "**the starting point, in principle, is that where damage can be technically foreseen, there is a notional duty of care, unless there are considerations of legal policy that negate the duty.**" <u>Vaknin</u>, 123; also C.A. 243/83 **Jerusalem Municipality v. Gordon**, 39(1) P.D. 113 (1985). Nevertheless, a finding of normative foreseeability "**is never derived automatically from a finding of technical foreseeability.... [for a duty of care] there are three requirements: first, foreseeability; second, 'neighborhood' or 'proximity,' and third, a judicial conclusion that it is fair, just and reasonable that a normative duty of care be imposed by force of law.**" Accordingly, a judicial determination that parties are remote from each other in law and not "neighbors" for the purpose of the tort of negligence will rule out a finding of a duty of care, even if the harm was technically foreseeable: C.A. 915/91 **State of Israel v. Levy**, 48(3) P.D. 45 (1994), Justice Shamgar, President of the Court, at 65, 66 (holding that the Commissioner of Insurance and the State were not responsible to individual insurance policy holders for damage caused by an insolvent insurance company which the Commissioner had licensed for business).[5]

---

[5] Discussing and applying the principles of the English judgments including in the cases of <u>Donoghue v. Stevenson</u> (1932) All E.R. Rep. 1 (the "neighbor" principle in the speech of Lord Atkin); <u>McCloughlin v. O'Brian</u> (1982) 2 All. E.R. 298 (normative foreseeability not to be derived automatically from technical foreseeability); <u>Caparo Industries v. Dickman</u> (1990) 1 All E.R. 568 ("In addition to the foreseeability of damage, necessary ingredients in any situation giving rise to a duty of care are that there should exist between the party owing the duty and the party to whom it is owed a relationship characterised by the law as one of 'proximity' or

8. The factors negating normative foreseeability are in the nature of "**considerations of legal policy that negate the duty. These legal policy considerations serve to balance the various interests that struggle to come to the fore. The court considers the need to ensure freedom of operation on the one hand, and the need to protect property and person on the other. It considers the type of damage and the ways in which it occurs. It takes into account the effect of its rulings on modes of human conduct in the future. It weighs the financial burden that will be imposed on particular classes of tortfeasors or injured parties as a result of the decision. These and other considerations are balanced out in the judicial consciousness of the court as it weighs them on scales of justice, determining the scope and boundaries of the notional duty of care by that measure, which constitutes the decisive consideration when the forces are in equipoise. This is, without a doubt, the purest form of judicial legislation.**" Vaknin, 123.

The normative factors cited by the case law as militating in favor of negation of the duty of care, or at least to the need for greater scrutiny thereof, include:

    i) the proximity or remoteness of the relevant activity or interests of the parties, *e.g.*, capacity of the defendant as landowner, practitioner of a certain occupation, owner or controller of property;

    ii) the asserted liability being based on a passive omission as opposed to an act;

    iii) the harm was not caused directly by the defendant but rather was directly caused by a third party; and

---

'neighbourhood' and that the situation should be one in which the court considers it fair, just and reasonable that the law should impose a duty of a given scope on the one party for the benefit of the other").

      iv)    where the damage is economic.

[**State of Israel v. Levy**, 66]

9.    In terms of banks as a category of potential tortfeasors, the Court has opined more than once that the public and economic status of banks, and their ability to disperse risk, are factors that militate in favor of extending the duty of care arising from a bank-customer relationship to third parties who either rely on the proper conduct of a bank's operations or whose financial interests may be directly affected by a bank's conduct: Civil Further Hearing 1740/91 **Barclays Discount Bank v. Frost Kostman**, 47(5) P.D. 31 (1993), Justice Barak, President, at 85-86; C.A. 8068/01 **Ayalon Insurance Company Ltd. v. Executor of Oppalger Estate**, 59(2) P.D. 349 (2004), Justice Hayut at 369 paragraph 14 *et seq*. On this basis, tortious liability of banks has been extended from bank customers to beneficiaries of accounts held by fiduciaries at banks, to non-customers doing business with or through banks, or, for example, to impose a duty to take measures to prevent forgery of bank checks for the protection of persons who may deal with such checks in ordinary course: C.A. 542/87 **Savings and Credit Association v. Ben Ahmad**, 44 (1) P.D. 422 (1990). The Court has emphasized, however, that the extension of the duty of care to persons who are not customers or holders of bank property is done cautiously on a careful review of the circumstances of a specific case, such as a case where the actions of an account administrator were so unusual and exceptionally suspicious with regard to the account beneficiary's property that the bank had a duty not to remain idle: **Ayalon Insurance Company Ltd. v. Executor of Oppalger Estate**, 59(2) P.D. 349, 373.

10.    There does not appear to be any precedent holding that a bank has a notional duty of care in respect of the uses to which a third party puts money received from the bank. There is certainly no precedent holding that a bank has a notional duty of care to the public at large for

the preservation of public safety, such that a bank can be held liable in negligence for the harmful or violent actions against private persons taken by persons who hold accounts at, or otherwise receive services from, that bank. Rather, in the present state of the case law the precedents do not support the proposition that there is a notional duty of care of a bank to the public at large, to fulfill a policing duty and to prevent illegal activity by those using its services. This seems to be consistent with an understanding that the activities of the terrorist organizations create the risks and burdens of terrorist violence; the activity of a bank does not.  That in itself is a factor negating the duty of care. So too, a banking operation has no direct or natural relation or connection to terrorist activities, much less terrorist activity in another country.

The tort of negligence is, after all, directed at carelessness, *inter alia* in the conduct of matters of business or occupation; it is not primarily directed at imposing a duty on one person to police another for the sake of public safety. An assertion that extends the tort of negligence to a bank in this manner appears to be an artificial construction of the tort of negligence. It would rather be the purview of legislation to impose extraordinary duties on banks. The duty of care derived from the principle of negligence "stands alone," and is not to be confused with the enactment of special duties by the legislature in a bank's jurisdiction, *e.g.,* in the areas of money laundering, the fight against organized crime, or terrorism.

It follows from this analysis that with respect to the cause of action for negligence, there is no support in precedent for the proposition that the Bank of China had a duty of care towards the public at large and for the sake of public safety *per se* in the Israeli law of negligence. Based on the aforesaid, my opinion is that the Bank of China is not liable for a breach of duty of care toward the Plaintiffs.

**From Duty of Care to Causation**

11.     Israeli law also requires that there be a causal link between the Bank of China's alleged conduct and the harm inflicted by the terrorist bombing in order for there to be a *prima facie* case of liability on general tort principles.  First, for liability to crystallize in Israeli tort law a person's conduct must be a "but for" cause without which the event that is the subject matter of the action would not have occurred (*causa sine qua non*). Second, the consequence of a terrorist bombing or other violent act does not emanate naturally or in the ordinary course from a party's use of banking services. Thus, the fulfillment of the "but for" test of factual causation in accordance with general tort principles seems to lack substance on the facts set forth in the Complaint.

12.     Moreover, Section 64(2) of the Civil Wrongs Ordinance provides that a person cannot be held liable as a wrongdoer (tortfeasor) where the fault of another person is the <u>decisive</u> cause of the damage.  The factors applied to deciding when another person's conduct is the decisive cause of damage or injury are i) foreseeability; ii) scope of risk; and iii) common sense.[6] In the absence of a direct connection between the transfers of funds and the terrorist bombing that is the subject matter of the claim, or short of assuming for the sake of argument that a bank has specific notice of the intended use of the funds being processed through a bank account, it seems farfetched to view a bank's rendition of banking services as the proximate cause of the damage in terms of the law of negligence. Rather, common sense considerations will lead to the conclusion that in the absence of special facts linking the banking services specifically to the terrorist bombing that is the subject matter of the Complaint – as opposed to linking them to the

---

[6] **Vaknin**, 146 and authorities discussed there.

recipient in general – it was the terrorists who committed the decisive wrongdoing, and thus have to be deemed the parties solely responsible for carrying out the terrorist bombing even before considering the case against the Bank of China further on the merits.

**Breach of Statutory Duty**

13. In the tort of breach of statutory duty under Israeli law, the actionable duty must be one that has been imposed on the defendant by statutory enactment and is intended for the benefit or protection of the plaintiff, including as a member of a class or description of persons that the statute is intended to benefit or protect. The source of the alleged tortious liability for breach of statutory duty is the Civil Wrongs Ordinance; the source of the alleged duty imposed on one person for the protection of another is the statute, and the substance and scope of such duty have to be ascertained from the interpretation of the statute.[7] If the statute is intended for the benefit or protection of a class or description of persons, the statute does not have to specify that it grants them a remedy in tort in order to create a recognizable statutory duty under Section 63 of the Civil Wrongs Ordinance. Rather, the proviso of Section 63(a) is that **"such other person shall not be entitled by reason of such failure to any remedy specified in this Ordinance if, on a proper construction of such enactment, the intention thereof was to exclude such remedy."**

14. As with the tort of negligence, a plaintiff who asserts a breach of statutory duty under Section 63 of the Civil Wrongs Ordinance must demonstrate that the defendant was subject to an actionable duty under Israeli law, the duty was breached, and the damage was suffered by reason of the defendant's breach of duty - all of that without another person's fault

---

[7] **Vaknin**, 135.

- 10 -

being the decisive cause of the damage. However, the duties allegedly breached in the Complaint are cited with reference to United States statutes, not Israeli statutes. The Complaint therefore fails to state a cause of action for breach of statutory duty under Israeli law. The tort of breach of statutory duty under Israeli law is predicated first and foremost upon: i) an Israeli statute; and ii) the application of the Israeli statute to the defendant at the time of the acting. This is clear from a reading of Section 63 of the Civil Wrongs Ordinance and the applicable provisions of the Interpretation Ordinance. Section 63 provides as follows:

> 63. (a) Breach of a statutory duty consists of the failure by any person to perform a duty imposed upon him by any <u>enactment</u> other than this Ordinance, being <u>an enactment</u> which, on a proper construction thereof, was intended to be for the benefit or protection of any other person, whereby such other person suffers damage of a kind or nature contemplated by such <u>enactment</u> . . . . [emphasis supplied]

The definition of the term "enactment" used in the Civil Wrongs Ordinance is to be found in Section 1 of the Interpretation Ordinance [New Version].[8] "Enactment" is defined as: "<u>any Law, or any regulation</u>, whether made before or after the commencement of this Ordinance…" The definition of a "law" provided there is – "<u>a legislative act of the Knesset and includes any Ordinance</u>." Section 1 of the Interpretation Ordinance goes on to define "<u>Regulation</u>" as: "any regulation, rule, byelaw, proclamation (*minshar*), declaration (*akhraza*), order, direction, notification, notice, or other instrument, made or issued <u>by any authority in Palestine or Israel</u> (whether before or after the commencement of this Ordinance) <u>under authority of any Law</u> or of any Act of the British Parliament or of any Order by His Majesty in Council; and includes any

---

[8] The English version of the Interpretation Ordinance is annexed to this Opinion and marked "B." This translation is the Authorized Translation from Hebrew prepared at the Ministry of Justice. The Interpretation Ordinance has been amended subsequent to preparation of the authorized translation.

order, direction, notification, notice or other instrument, made or issued under any such regulation, rule or byelaw . . . ." [emphasis supplied]

It follows clearly that the term "enactment" in the Civil Wrongs Ordinance is a reference to local enactments only, *i.e.* enactments that are in force in the territory of the State of Israel, the West Bank and Gaza Strip, whether made before or after Israel became independent in 1948. It is abundantly clear that an enactment of a foreign country is not within the meaning of enactment for this purpose, and hence cannot be used to found an action for breach of statutory duty under Israeli law.

15.     Another condition for the application of Section 63 to the case is that the <u>Israeli</u> enactment has <u>imposed a duty on the defendant</u>, as stated in the first part of Section 63. Since the Complaint does not, however, cite any Israeli enactment whatsoever, it has not disclosed any material Israeli statutory duty that was imposed on the Defendant, and perforce has not disclosed a cause of action for breach of statutory duty under Israeli law.

16.     The absence of a cause of action for breach of statutory duty in Israeli law on the face of the Complaint for want of mention of applicable Israeli statutory enactments does not appear to be a mere formality or technical point on the pleadings: Israeli statutes and regulations governing banks apply only to banks in Israeli jurisdiction.  Israeli statutes and regulations do not apply to a bank in China, *i.e.* a foreign-incorporated banking corporation that neither resided in nor did business in Israel at the relevant times. Such a bank is not subject to the Israeli banking laws. This is so even after Israel ratified and implemented the United Nations International Convention for the Suppression of the Financing of Terrorism (the "Convention"): the arrangements for international cooperation under the Convention provide for each member state to enact domestic laws in furtherance of the purposes of the Convention, but solely on a

territorial basis. Thus, on the one hand the Israeli Law and sub-legislation will bind banks operating in Israel or which are incorporated in Israel. On the other hand, statutes and sub-legislation of a foreign state enacted under the Convention (if enacted) will bind banks operating in its territory, on the terms of such state's domestic law.  Were this not the interpretation given, the sovereignty of one state would be extended effectively into the territory of another state, in contravention of the principles of comity and reciprocity among nations. Indeed, Article 5.1 of the Convention provides that "**Each State Party, in accordance with its domestic legal principles, shall take the necessary measures to <u>enable a legal entity located in its territory or organized under its laws</u> to be held liable when a person responsible for the management or control of that legal entity has, in that capacity, committed an offence set forth in article 2. Such liability may be criminal, civil or administrative.**" [emphasis supplied]  The Defendant Bank of China here, however, is neither located in Israel nor organized under the laws of Israel.  In the circumstances of this case, then, no applicable statutory duty can be derived from Israeli law with respect to the Bank of China, since the conduct described in the Complaint allegedly took place outside of Israel at one or more branches of a Chinese bank that is not subject to the laws of Israel.

**<u>Vicarious Liability: Section 12 of the Civil Wrongs Ordinance</u>**

17.     The Complaint at ¶¶ 147-48 cites the provisions of Section 12 of the Civil Wrongs Ordinance in support of an allegation that the Defendant Bank of China should be held liable in tort for having assisted the Palestinian Islamic Jihad carry out the terrorist bombing that allegedly injured Plaintiffs. The Ministry of Justice English text of Section 12 reads as follows:

> **12.     For the purpose of this Ordinance, any person who joins or aids in, authorises, counsels, commands, procures or ratifies any act done or**

> **to be done, or any omission made or to be made, by any other person shall be liable for such act or omission.**

It seems plain that the provision of Section 12 above requires that the person who is aiding, joining in (abetting), authorizing or otherwise taking part in the civil wrong as provided therein must have a subjective intent to commit the same act as the principal wrongdoer. For Section 12 liability it is not sufficient that a party may have merely assisted a person, who then committed or procured others to commit a violent tortious act such as assault under the Civil Wrongs Ordinance. In C.A. 1636/98 **Rav Bariach Ltd. v. Havshush Vehicle Accessory Trading House Ltd.**, Tak-El 2001(2) 387, the Court considered the meaning of Section 12 in the context of assertions of contributory infringement of a patent by a supplier of components, and held (Justice Englard, *per curiam*) that the meaning of Section 12 is that of the U.K. common law rule on joint tortfeasors as stated in Clerk & Lindsell on Torts (18th ed. 2000) para. 4-108:

> **Where one person instigates another to commit a tort they are joint tortfeasors; so are persons whose respective shares in the commission of a tort are done in furtherance of a common design. "All persons in trespass who aid or counsel, direct, or join, are joint trespassers." But mere similarity of design on the part of independent actors, causing independent damage, is not enough; <u>there must be concerted action towards a common end</u>. A person who only facilitated (as opposed to procured) a tort would not be liable as a joint tortfeasor. [emphasis supplied].[9]**

That is to say, it does not state a cause of action under Section 12 for the Plaintiffs to allege that the Defendant Bank of China facilitated the activity of terrorist organizations by the very rendition of banking services to a terrorist operant. In order for the provision of Civil Wrongs Ordinance Section 12 to be proven to apply to the Defendant Bank of China, it will have to be shown that the Defendant Bank had joined the conspiracy to carry out the terrorist bombing, knowingly and in concert with the terrorist organization, thereby inflicting the alleged harm.

---

[9] Justice Englard paragraphs 18 and 22 of the judgment.

### Conclusion

18    In my opinion, the Complaint has not disclosed a cause of action against the Bank of China as stated in the Complaint under Israeli law for either negligence, breach of statutory duty, or vicarious liability under the Civil Wrongs Ordinance. My view of the insufficiency of the vicarious liability assertion under Section 12 of the Civil Wrongs Ordinance is based strictly on Israeli law and procedure.

Subject to that qualification this opinion is confined to the substantive law of torts in the domestic law of Israel and has not addressed the procedural or probative aspects of the case, any assertion of fact in the present case or the question of quantum of damages.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: December 26, 2008, at Tel-Aviv, Israel

_____
Peter Gad Naschitz
Naschitz, Brandes & Co., Advocates