# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

_____

SHERYL WULTZ, et al.

                        Plaintiffs,

        v.

THE ISLAMIC REPUBLIC OF IRAN,

et al.,

                        Defendants.

_____

Civil File No. 1:08-cv-01460 (RCL)

## DECLARATION OF PETER GAD NASCHITZ

I, Peter Gad Naschitz, hereby declare:

1.      I am an Israeli Advocate and Notary, of 5 Tuval Street, Tel Aviv, Israel. I was admitted to the Israel Bar in 1957 and have practiced law continuously since that time. I am the senior partner of Naschitz, Brandes & Co., a leading Israeli law firm comprising ninety Israeli advocates engaged in a diversified civil and commercial law practice. My academic training includes a Bachelor of Laws (LL.B) degree awarded by the Tel Aviv School of Law and Economics, affiliated with the Hebrew University of Jerusalem, and a Master of Laws (LL.M) from Tel Aviv University. I have been affiliated as a lecturer with the faculties of law at Hebrew University in Jerusalem, Tel Aviv University, and Bar Ilan University for many years. Since admission to the Bar I have appeared continually before the courts of Israel on all levels, including a substantial number of cases involving tort claims. I have been Chairman of the Tort Committee of the Israel Bar, and serve as President of the Israeli Chapter of AIDA – the International Association of Insurance Law – and International Vice President of AIDA. I have

represented parties to transnational disputes, acted as an arbitrator in disputes, participated in commissions of inquiry at various levels, and testified before committees of the Knesset (Israeli legislature) as an expert on matters of civil law legislation.

2.     My opinion has been requested on the position of Israeli law in respect of the Israeli law causes of action that are pleaded against the Bank of China in the First Amended Complaint for Damages dated January 13, 2009 filed in the United States District Court for the District of Columbia in the matter of *Wultz v. Islamic Republic of Iran* ("FAC").  For the purpose of this Opinion I have reviewed only the text of the original Complaint for Damages dated August 19, 2008 and the FAC dated January 13, 2009. I have not investigated, and I express no opinion with respect to, the factual allegations in the FAC. I do wish to add, however, that as an Israeli I am totally opposed, abhorred and dismayed by Hamas, Palestinian Islamic Jihad, and their operations. My opinion relates only and solely to the legal aspects of the FAC vis-a-vis the Bank of China. The causes of action alleged in the FAC under the Law of Israel are:

      i)        Negligence (FAC, ¶¶ 126-40);

      ii)      Breach of Statutory Duty (FAC, ¶¶ 141-52); and

      iii)     Vicarious Liability (FAC, ¶¶ 153-58).

I will consider each of these causes of action in turn. The captions in my Opinion are for the sake of reading convenience only.

## Definition of Negligence

3.     Sections 35 and 36 of the Civil Wrongs Ordinance [New Version] ("Civil Wrongs Ordinance") define negligence as follows:[1]

---

[1]     Israeli statutes are enacted in Hebrew, and only the Hebrew version is binding. Unless stated otherwise, the translations of statutes herein into English are taken from the Laws of the

**35. Where a person does some act which in the circumstances a reasonable prudent person would not do, or fails to do some act which in the circumstances such a person would do, or fails to use such skill or take such care in the exercise of any occupation as a reasonable prudent person qualified to exercise such occupation would in the circumstances use or take, then such act or failure constitutes carelessness and a person's carelessness as aforesaid in relation to another person to whom he owes a duty in the circumstances not to act as he did constitutes negligence. Any person who causes damage to any person by his negligence commits a civil wrong.**

**36.    For the purpose of section 35, every person owes a duty to all persons whom, and to the owner of any property which, a reasonable person ought in the circumstances to have contemplated as likely in the usual course of things to be affected by an act, or failure to do an act, envisaged by that section.**

4.    The Civil Wrongs Ordinance provides the general scheme of the principle of negligence; however, the Israeli courts, as the judicial branch of the State of Israel, are charged with the interpretation and administration of the Civil Wrongs Ordinance.[2] Pursuant to Section 21(b) of the Basic Law: The Judiciary, "a ruling of law by the Supreme Court is binding on all courts." Thus, to ascertain the proper interpretation of the Civil Wrongs Ordinance under Israeli law, one must analyze the rulings of the Supreme Court.

---

State of Israel, Authorized Translation from Hebrew prepared at the Ministry of Justice. The English version of the Civil Wrongs Ordinance, in its entirety, is annexed to this Opinion and marked "A." The Civil Wrongs Ordinance has been amended subsequent to the preparation of such translation, in a manner that is not material to the subject matter of this Opinion.

[2]    Section 1 of the Civil Wrongs Ordinance, as originally enacted, provided that the Civil Wrongs Ordinance and the expressions therein should be construed in accordance with English law. This provision was repealed by subsequent legislation establishing the independence of Israeli law from English law, firstly by the Law and Administration Ordinance, 5708-1948 as amended in 1972, repealing the binding effect of any "such provision of a Law as requires such Law or any expression therein to be interpreted in accordance with English law or with principles of legal interpretation obtaining in England." The repeal was completed by the Foundations of Law, 5740-1980. The Interpretation Ordinance that is mentioned in Section 1 of the Civil Wrongs Ordinance has largely been repealed by the Interpretation Law, 5741-1981; however, in consequence of Section 1 of the latter statute, the terms used in the Civil Wrongs Ordinance, as an enactment that preceded the Interpretation Law, still are to be construed according to the Interpretation Ordinance.

5.     The rulings of the Supreme Court have defined the civil wrong (tort) of negligence in Sections 35 and 36 of the Civil Wrongs Ordinance to encompass the following cumulative elements:

i)      a duty of care on the part of the defendant toward the injured party;

ii)     a breach of such duty of care by the defendant, by act or omission (referred to also as a person's "carelessness" in Section 35); and

iii)    a causal connection between the breach of the duty of care and the damage incurred, such damage being of the type that is likely to be caused by the breach of duty in the usual course of events.[3]


## Duty of Care

6.     Whether the defendant Bank of China owed a duty of care to the Plaintiffs is to be determined primarily by application of the test of foreseeability provided by the framework provision of Section 36 of the Civil Wrongs Ordinance. The duty of care comprises two aspects, as reviewed in the leading case of **Vaknin**, 122 *et seq.*, 138:

First, the notional duty – *i.e.* is there a duty of care in respect of a certain generic risk or type of harm, as between classes of actors and classes of injured parties?

Second, the duty of care in fact – *i.e.* did there exist a duty of care between the specific defendant and the specific injured party, according to the circumstances of the specific event?

> **In the context of the notional duty of care, the question is an abstract one. It deals with entire categories of actors (manufacturers, employers, drivers, teachers), and of injured parties (consumers, pedestrians, pupils), of damage (physical, pecuniary), and of actions (act, omission).**

---

[3]      The leading statements of the law are in Civil Appeal (C.A.) 145/80 **Vaknin v. Beit Shemesh Local Council**, 37(1) P.D. 113 (1982) ("Vaknin"), per Justice Aharon Barak (later President of the Supreme Court).

> **The examination is disconnected from the concrete facts of the specific event.** (Vaknin, 125).[4]

> **The law recognizes the existence of a notional duty of care in relationships between the plaintiff and the tortfeasor. That is a necessary, though not sufficient, condition of the existence of liability in the tort of negligence. There still arises the additional question – whether there is a concrete duty of care between the specific tortfeasor and the specific injured party, under the particular circumstances of the case, for the specific damage caused.** (*Id.*).

7.      When applying the foreseeability standard in the context of the duty of care, the law of negligence distinguishes between technical foreseeability – that which a person <u>can</u> foresee – and normative foreseeability – that which a person <u>ought to</u> foresee. It has been said that **"the starting point, in principle, is that where damage can be technically foreseen, there is a notional duty of care, unless there are considerations of legal policy that negate the duty."** <u>Vaknin</u>, 123; also C.A. 243/83 **Jerusalem Municipality v. Gordon**, 39(1) P.D. 113 (1985). Nevertheless, a finding of normative foreseeability **"is never derived automatically from a finding of technical foreseeability . . . . [for a duty of care] there are three requirements: first, foreseeability; second, 'neighborhood' or 'proximity,' and third, a judicial conclusion that it is fair, just and reasonable that a normative duty of care be imposed by force of law."** Accordingly, a judicial determination that parties are remote from each other in law and not "neighbors" for the purpose of the tort of negligence will rule out a finding of a duty of care, even if the harm was technically foreseeable: C.A. 915/91 **State of Israel v. Levy**, 48(3) P.D. 45 (1994), Justice Shamgar, President of the Court, at 65, 66 (holding that the Commissioner of Insurance and the State were not responsible to individual insurance

---

[4] See translations of judgments attached as exhibits to the Declaration of Walter P. Loughlin.

policy holders for damage caused by an insolvent insurance company which the Commissioner had licensed for business).[5]

8.     The factors negating normative foreseeability are in the nature of **"considerations of legal policy that negate the duty. These legal policy considerations serve to balance the various interests that struggle to come to the fore. The court considers the need to ensure freedom of operation on the one hand, and the need to protect property and person on the other. It considers the type of damage and the ways in which it occurs. It takes into account the effect of its rulings on modes of human conduct in the future. It weighs the financial burden that will be imposed on particular classes of tortfeasors or injured parties as a result of the decision. These and other considerations are balanced out in the judicial consciousness of the court as it weighs them on scales of justice, determining the scope and boundaries of the notional duty of care by that measure, which constitutes the decisive consideration when the forces are in equipoise. This is, without a doubt, the purest form of judicial legislation."** Vaknin, 123.

The normative factors cited by the case law as militating in favor of negation of the duty of care, or at least to the need for greater scrutiny thereof, include:

---

[5]     Discussing and applying the principles of the English judgments including in the cases of Donoghue v. Stevenson (1932) All E.R. Rep. 1 (the "neighbor" principle in the speech of Lord Atkin); McCloughlin v. O'Brian (1982) 2 All. E.R. 298 (normative foreseeability not to be derived automatically from technical foreseeability); Caparo Industries v. Dickman (1990) 1 All E.R. 568 ("In addition to the foreseeability of damage, necessary ingredients in any situation giving rise to a duty of care are that there should exist between the party owing the duty and the party to whom it is owed a relationship characterised by the law as one of 'proximity' or 'neighbourhood' and that the situation should be one in which the court considers it fair, just and reasonable that the law should impose a duty of a given scope on the one party for the benefit of the other").

i)      the proximity or remoteness of the relevant activity or interests of the

parties, *e.g.*, capacity of the defendant as landowner, practitioner of a certain

occupation, owner or controller of property;

ii)     the asserted liability being based on a passive omission as opposed to an

act;

iii)    the harm was not caused directly by the defendant but rather was directly

caused by a third party; and

iv)     where the damage is economic.

**[State of Israel v. Levy, 66]**

9.      In terms of banks as a category of potential tortfeasors, the Court has opined more

than once that the public and economic status of banks, and their ability to disperse risk, are

factors that militate in favor of extending the duty of care arising from a bank-customer

relationship to third parties who either rely on the proper conduct of a bank's operations or whose

financial interests may be directly affected by a bank's conduct: Civil Further Hearing 1740/91

**Barclays Discount Bank v. Frost Kostman**, 47(5) P.D. 31 (1993), Justice Barak, President, at

85-86; C.A. 8068/01 **Ayalon Insurance Company Ltd. v. Executor of Oppalger Estate**, 59(2)

P.D. 349 (2004), Justice Hayut at 369 paragraph 14 *et seq*. On this basis, tortious liability of

banks has been extended from bank customers to beneficiaries of accounts held by fiduciaries at

banks, to non-customers doing business with or through banks, or, for example, to impose a duty

to take measures to prevent forgery of bank checks for the protection of persons who may deal

with such checks in ordinary course: C.A. 542/87 **Savings and Credit Association v. Ben

Ahmad**, 44 (1) P.D. 422 (1990). The Court has emphasized, however, that the extension of the

duty of care to persons who are not customers or holders of bank property is done cautiously on a

careful review of the circumstances of a specific case, such as a case where the actions of an account administrator were so unusual and exceptionally suspicious with regard to the account beneficiary's property that the bank had a duty not to remain idle: **Ayalon Insurance Company Ltd. v. Executor of Oppalger Estate**, 59(2) P.D. 349, 373.

10.     There does not appear to be any precedent holding that a bank has a notional duty of care in respect of the uses to which a third party puts money received from the bank.  There is certainly no precedent holding that a bank has a notional duty of care to the public at large for the preservation of public safety, such that a bank can be held liable in negligence for the harmful or violent actions against private persons taken by persons who hold accounts at, or otherwise receive services from, that bank. Rather, in the present state of the case law the precedents do not support the proposition that there is a notional duty of care of a bank to the public at large, to fulfill a policing duty and to prevent illegal activity by those using its services. This seems to be consistent with an understanding that the activities of the terrorist organizations create the risks and burdens of terrorist violence; the activity of a bank does not.  That in itself is a factor negating the duty of care. So too, a banking operation has no direct or natural relation or connection to terrorist activities, much less terrorist activity in another country.

The tort of negligence is, after all, directed at carelessness, *inter alia* in the conduct of matters of business or occupation; it is not primarily directed at imposing a duty on one person to police another for the sake of public safety. An assertion that extends the tort of negligence to a bank in this manner appears to be an artificial construction of the tort of negligence. It would rather be the purview of legislation to impose extraordinary duties on banks. The duty of care derived from the principle of negligence "stands alone," and is not to be confused with the

enactment of special duties by the legislature in a bank's jurisdiction, *e.g.,* in the areas of money laundering, the fight against organized crime, or terrorism.

It follows from this analysis that with respect to the cause of action for negligence, there is no support in precedent for the proposition that the Bank of China had a duty of care towards the public at large and for the sake of public safety *per se* in the Israeli law of negligence. Based on the aforesaid, my opinion is that the Bank of China is not liable for a breach of duty of care toward the Plaintiffs.

## From Duty of Care to Causation

11.     Israeli law also requires that there be a causal link between the Bank of China's alleged conduct and the harm inflicted by the terrorist bombing in order for there to be a *prima facie* case of liability on general tort principles. First, for liability to crystallize in Israeli tort law a person's conduct must be a "but for" cause without which the event that is the subject matter of the action would not have occurred (*causa sine qua non*). Second, the consequence of a terrorist bombing or other violent act does not emanate naturally or in the ordinary course from a party's use of banking services. Thus, the fulfillment of the "but for" test of factual causation in accordance with general tort principles seems to lack substance on the facts set forth in the FAC.

12.     Moreover, Section 64(2) of the Civil Wrongs Ordinance provides that a person cannot be held liable as a wrongdoer (tortfeasor) where the fault of another person is the <u>decisive</u> cause of the damage.  The factors applied to deciding when another person's conduct is the decisive cause of damage or injury are i) foreseeability; ii) scope of risk; and iii) common sense.[6]

---

[6] **Vaknin**, 146 and authorities discussed there.

In the absence of a direct connection between the transfers of funds and the terrorist bombing

that is the subject matter of the claim, or short of assuming for the sake of argument that a bank

has specific notice of the intended use of the funds being processed through a bank account, it

seems farfetched to view a bank's rendition of banking services as the proximate cause of the

damage in terms of the law of negligence. Rather, common sense considerations will lead to the

conclusion that in the absence of special facts linking the banking services specifically to the

terrorist bombing that is the subject matter of the FAC – as opposed to linking them to the

recipient in general – it was the terrorists who committed the decisive wrongdoing, and thus have

to be deemed the parties solely responsible for carrying out the terrorist bombing even before

considering the case against the Bank of China further on the merits.

## Breach of Statutory Duty

### Definition of Actionable Statutory Duty

13.     In the tort of breach of statutory duty under Israeli law, the actionable duty must

be one that has been imposed on the defendant by a statutory enactment that is intended for the

benefit or protection of the plaintiff, including as a member of a class or description of persons

that the statute is intended to benefit or protect.  Sec. 63 (a)-(b) of the Civil Wrongs Ordinance.

The source of the alleged tortious liability for breach of statutory duty is the Civil Wrongs

Ordinance; the source of the alleged duty imposed on one person for the protection of another is

the statute, and the substance and scope of such duty have to be ascertained from the

interpretation of the statute.[7] If the statute is intended for the benefit or protection of a class or

description of persons, the statute does not have to specify that it grants them a remedy in tort in

---

[7] **Vaknin,** 135.

order to create a recognizable statutory duty under Section 63 of the Civil Wrongs Ordinance. Rather, the proviso of Section 63(a) is that **"such other person shall not be entitled by reason of such failure to any remedy specified in this Ordinance if, on a proper construction of such enactment, the intention thereof was to exclude such remedy**."

Causation

14.     As with the tort of negligence, a plaintiff who asserts a breach of statutory duty under Section 63 of the Civil Wrongs Ordinance must demonstrate that the defendant was subject to an actionable duty under Israeli law, the duty was breached, and the damage was suffered by reason of the defendant's breach of duty - all of that without another person's fault being the decisive cause of the damage. Therefore, the analysis of causation set forth above in this opinion under the heading of negligence - indicating an absence of causation according to the "but for" test of factual causation as well as the tests of legal causation under Section 64(2) of the Civil Wrongs Ordinance -  will apply equally to the deliberation on breach of statutory duty.

The Enactments Alleged in the FAC

15.     The duties allegedly breached according to the FAC ¶ 146 are cited with reference to criminal prohibitions under the following statutes ("enactments"):[8]

> a)     Section 4 of the Prevention of Terrorism Ordinance, 5708-1948 ("Prevention of Terrorism Ordinance");
>
> b)     Sections 145 and 148 of The Penal Law, 5737-1977 ("the Penal Law"); and
>
> c)     Section 85 of the Defence (Emergency) Regulations of 1945 ("Emergency Defence Regulations").

---

[8]     English translations of the Israeli criminal statutes alleged as the predicate statutory duties breached in Count Five are set forth, in pertinent part, as an exhibit annexed to the Declaration of Walter P. Loughlin.

FAC ¶ 147 contains the assertion that the conduct of the Defendant breached the enactments despite the fact that the Defendant's conduct did not take place in Israel on the ground that Israel has extraterritorial criminal jurisdiction over crimes against the security of the State of Israel and over crimes against the lives and persons of Israeli citizens as such, pursuant to Section 13 of the Penal Law.  Plaintiffs submit in the FAC ¶ 148 that all of the enactments were intended for their benefit and protection.

Below I will set forth my analysis of the question of the applicability of each of the enactments to the allegations in the FAC; the asserted extraterritorial extension of the tort of breach of statutory duty by reason of the extraterritorial criminal jurisdiction of Israel pursuant to Section 13 of the Penal Law; and the question whether the enactments are intended to impose a duty on the Defendant for the protection or benefit of the Plaintiffs or persons of their description or class. My opinion refers only to the legal arguments that are expressly pleaded in the FAC. I am not a specialist in criminal law, and I consider myself qualified to form an opinion on the matters of criminal law referred to herein based only on my understanding of the general principles of statutory interpretation within the context of an opinion considering the cause of action for breach of statutory duty under Israeli law.  In so doing, I rely on a consultation with Professor Kenneth Mann, who is a well known authority on criminal law.

<u>Applicability of the Enactments to the Facts Alleged in the FAC</u>

16.     Section 4 of Prevention of Terrorism Ordinance[9] as amended, provides as follows:

4. A person who -

    (a)     repealed.[10]

    (b)     publishes, in writing or orally, words of praise or sympathy for or an appeal for aid or support of a terrorist organisation; or

---

[9]     Accessed in English translation at the Israel Ministry of Foreign Affairs website: http://www.mfa.gov.il/MFA/MFAArchive/1900_1949/Prevention%20of%20Terrorism%20Ordinance%20No%2033%20of%205708-19.

[10]     S.H. 1845, 22.5.2005, Amendment 4, as part of Amendment 66 of Penal Law, 5737-1977.

(c)      has propaganda material in his possession on behalf of a terrorist organisation; or

(d)      gives money or money's worth for the benefit of a terrorist organisation; or

(e)      puts a place at the disposal of anyone in order that that place may serve a terrorist organisation or its members, regularly or one particular occasion, as a place of action, meeting, propaganda or storage; or

(f)      puts an article at the disposal of anyone in order that that article may serve a terrorist organisation or a member of a terrorist organisation in carrying out an act on behalf of the terrorist organisation,

g)      does any act manifesting identification or sympathy with a terrorist organisation in a public place or in such manner that persons in a public place can see or hear such manifestation of identification or sympathy, either by flying a flag or displaying a symbol or slogan or by causing an anthem or slogan to be heard, or any other similar overt act clearly manifesting such identification or sympathy as aforesaid.

shall be guilty of an offence and shall be liable on conviction to imprisonment for a term not exceeding three years or to a fine not exceeding one thousand pounds[11] or to both such penalties.

From this recital of the provisions of Sec. 4 of the Prevention of Terrorism Ordinance it seems to follow quite clearly that none of the allegations in the FAC discloses the elements of any of these offenses.  It has not been alleged that the Bank gave money to the terrorist organizations in order to fall within sub-section (d); rather the Bank has allegedly only served as a conduit to enable a terrorist operant to transfer money. Similarly it has not been alleged that the Bank put an article at the disposal of the terrorist organizations under sub-section (f); the Bank has allegedly rendered only ordinary banking services. Nor has it been alleged that the Bank has published praise or propaganda in support of the terrorist organizations, or identified with them, within the other sub-sections of Section 4 of the Prevention of Terrorism Ordinance.

17.    Likewise, in my opinion there is no allegation in the FAC disclosing an offense under Penal Law §§ 145-148. These provisions form Chapter Eight, Article Two of the Penal Law, related to "Unlawful Associations and Assemblies." Section 145 (1) defines "unlawful

---

[11]     Notwithstanding the text, the maximum fine for this offense is that stated in the Penal Law, Sec. 61 (a) (3) as amended from time to time in respect of offenses the sentence for which exceeds one year and does not exceed three years, presently at NIS 67,300.

association" with reference to bodies of persons, incorporated or unincorporated, which advocate, incite or encourage the subversion of the political order, the overthrow by force of the lawful government of Israel or of any other state or of organized government, or the destruction or injury of State property. The provisions of Penal Law §§ 145 (2)-(5) extend the definition to bodies of persons that support unlawful associations, or form affiliations or factions or sub-groups thereof; as well as bodies that do not notify their rules or that continue to meet after being dissolved by law (§ 145 (3)). Pursuant to an amendment of 2008, an unlawful association includes racist and Nazi organizations.

There is no doubt that the Palestinian Islamic Jihad is a pernicious, "unlawful association" for the purpose of § 145 of the Penal Law. However, examination of the specific elements of the offenses set forth in Penal Law §§ 145-148 shows that they are not disclosed by the FAC.

Penal Law § 146 imposes criminal liability for advocating or encouraging any of the acts declared unlawful by § 145. The FAC clearly does not disclose conduct of this nature. Similarly, there is no allegation in the FAC that the Bank became a member of, or assumed an active role in, the terrorist organization in order to commit an offense under Penal Law § 147. Finally, there is no allegation in the FAC that the Bank paid or solicited a membership fee or a contribution for or on account of unlawful associations in the meaning of Penal Law § 148.

18.     Section 85 of the Emergency Defence Regulations includes two offenses which may be applicable to the facts. First, Section 85 (c) imposes criminal liability on "any person who . . . does any work or performs any service for an unlawful association, unless he proves that he *bona fide* believed that the work or service was not for an unlawful association." An "unlawful association" is defined in Section 84, and there is no doubt that the Palestinian Islamic Jihad is an unlawful association for this purpose. The Bank is not alleged to have worked for an unlawful association. It is alleged in the FAC that the Bank rendered banking services to an individual who is alleged to be an operant of what are in fact unlawful associations. For the service to be considered as a service "performed for" an unlawful association, however, it would

appear that the offense requires performance of a service directly for the unlawful association. In this context the language of "performing a service for," as opposed to doing work, indicates a contract for services as opposed to a contract of employment. If the Bank was alleged to have performed services for the Palestinian Islamic Jihad, the burden would pass to the Bank to establish that it *bona fide* believed that the service was not for an unlawful association, pursuant to the ending part of Section 85. However, the allegations in the FAC are not to the effect that the Bank had a contract of services with the PIJ, but rather the banking services were given to an individual account holder, who is alleged to be an operant and agent of the Palestinian Islamic Jihad and Hamas. Therefore, in my opinion, the offense under Section 85 (c) is not disclosed by the FAC. There arises no presumption of liability under the first of Section 85 (c), or any question of rebuttal of the presumption under the ending part.

19.     The second offense that falls to be considered under the Emergency Defence Regulations is pursuant to Section 85 (f):

> **has in his possession, custody or control any** book, **account**, periodical, handbill, poster, newspaper or other document, **or any funds**, insignia or property, belonging or **related to or issued by or in the interests of**, or purporting to belong or relate to or to be issued by or in the interests of, an unlawful association. [emphases added to highlight the material words].

The FAC alleges that the Bank had in its possession an account and funds related to the interests of an unlawful association, through the account of the alleged terrorist operant. Therefore the elements of Emergency Defence Regulations § 85 (f) are *prima facie* disclosed by the allegations in the FAC.

### Possible extension of the criminal law beyond Israeli jurisdiction based on Section 13 of the Penal Law

20.     Section 13 (b) (1) of the Penal Law extends the Israeli penal laws to offenses committed anywhere *inter alia* against the person, health, liberty or property of Israeli nationals, Israeli residents or Israeli public servants *as such*. The other parts of Penal Law § 13 are not applicable to this case. The provisions of Section 13 do not in themselves create any specific

offense. Rather, Section 13 provides for application of the Israeli penal laws in accordance with the object to protect the State of Israel and its people by way of extending the criminal jurisdiction of Israel to persons who commit violence against the State, its representatives or people, for anti-Israeli motives, outside of Israeli jurisdiction. The juridical rationale of such a protective extension of Israeli criminal law is that offenders against the life or liberty of Israelis *as such*, by targeting Israel or Israelis as such, and acting with the intent to harm them as such, thereby declare themselves enemies of Israel and connect themselves, by their Israel-specific malicious intent, to Israeli jurisdiction. Accordingly, if a defendant is accused of violence against Israelis as such outside of Israel, a determination whether the penal laws apply to such defendant by force of § 13 of the Penal Law will turn on a characterization of the defendant's motives and objectives as to whether they were directed against Israelis as such – in which case the jurisdiction will apply. If the defendant is not accused of such violence, motivation and objectives, the defendant will not be subject to the extension of Israeli penal law under § 13 of the Penal Law. Based on the FAC, there does not appear to be a basis for imputing such anti-Israeli motives and objectives to the Bank, or any violent crime whatsoever.

21.     Insofar as I am aware, there is no precedent for an attempt to assert the unilateral application of an Israeli criminal statute to a foreign offense as the basis for an allegation of breach of statutory duty in an Israeli court, to say nothing of the assertion of Israeli protective application of its penal laws based on Section 13, as the basis for an Israeli-law based tort case being litigated before a foreign court. Such a method of pleading also seems to me to be an attempt to circumvent the traditional rule of double actionability that can apply in an Israeli court hearing a tort claim in which the alleged tort was committed abroad by a foreign party.  In accordance with the rule of double actionability, the plaintiff must show that the conduct complained of is a tort both according to the law of the forum as well as the law of the place of commission of the tort.

22.     Even if the Plaintiffs are not held bound by the rule of double actionability,  the alleged application of the penal laws pursuant to Section 13 (b) (1) of the Penal Law would have

to be superimposed on the applicable enactment in the framework of Civil Wrongs Ordinance § 63, *i.e.* the Defence Emergency Regulations § 85.  The question then arises as to whether, in the circumstances of the case, the facts disclose the grounds for the extraterritorial extension of the criminal jurisdiction of Israel under Penal Law § 13 (b) (1), *i.e.* firstly, that the Defendant Bank has committed an offense against the person, health, liberty or property of Israeli nationals – and secondly, that such offense is against an Israeli national "as such." To my understanding, the allegations in the FAC do not evince a motivation of the Bank to harm Israelis as such. Therefore, Penal Law § 13 would not apply. Secondly, in my opinion, the condition of Penal Law § 13 whereby violence has been committed by the defendant against Israelis is also not fulfilled by the allegations in the FAC. The essence of the allegations against the Bank is that it rendered banking services in China, including the facilitation of bank transfers, to a terror operant who serves or works with organizations who subsequently murdered and injured Israeli citizens and residents in Israel. Such violent acts do not emanate naturally in the ordinary course from the rendition of banking services.

In summary,  the alleged omission of the Bank whereby it serviced and did not close the account of an account holder who was a terrorist operant does not in my opinion embody an offense by the Bank against the life, health, liberty or property of Israelis as such, within the meaning of Penal Law § 13.

23.    The non-application of Section 13 of the Penal Law does not, however, end the analysis of the possible application of the Israeli penal laws. Section 14 of the Penal Law provides with respect to offenses that are against the person, health, liberty or property of Israeli nationals – i.e. without the element of "as such" – the Israeli penal laws will apply if the offense has a maximum sentence of one year or more, and if the conditions of double criminality are met as defined in Penal Law §§ 14 (b)(1)-(2),(c). This is the wording of Section 14 of the Penal Law:
[12]

---

[12] Source of translation: 30 Israel Law Review 5-27 (1996).

14. (a) Israeli penal law shall apply to foreign offences against the life, person, health or freedom of an Israeli national or resident of Israel the maximum punishment for which is imprisonment for one year or more.

(b)    Where the offence is committed within the territory under the jurisdiction of another state, Israeli law shall apply to it only if:

(1) it is an offence also under the law of that state;

(2) under the law of that state there is no defence to criminal liability for that offence;

(3) the person concerned has not already been acquitted of it in that state and, if he has been convicted of it there, has not served the penalty imposed on him therefor.

(c)    There shall not be imposed for that offence a heavier penalty than could have been imposed under the law of that state.

24.    It has not been alleged in the FAC that the act of having possession of an account or funds that belong or are related to the PIJ, an offense under the Israel Emergency Defence Regulations § 85(f), was also an offense according to the laws of the People's Republic of China ("PRC"); and that there is no defense to the liability under the laws of the PRC. The Plaintiffs have not alleged the content of Chinese law or provided an opinion to prove it. Therefore, in my opinion, the FAC does not disclose a cause of action for breach of statutory duty under Israeli law on that ground as well.

Whether the Emergency Defence Regulations and other enactments impose duties on the Defendant for the protection of the life and property of persons of the description of the Plaintiffs

25.    As stated, by virtue of Sec. 63 (a) of the Civil Wrongs Ordinance, an action will not lie for breach of statutory duty under Israeli tort law unless the enactment on which the action is predicated was intended to impose a duty on persons of the description or class of the defendant for the protection or benefit of persons of the description or class of the plaintiff. Some clear cut cases of enactments having such intention are statutes imposing duties on employers for the protection of employees; manufacturers and merchants for the protection of consumers; building engineers for the protection of persons coming in or near a building; drivers for the

protection of pedestrians. The FAC has not cited an enactment intended to impose duties on banks *per se*. Instead, the FAC has cited the Emergency Defence Regulations § 85, which applies to the public at large for the protection of the State.

To see why this is so it is necessary to take notice of the background of Israel's security legislation. Pursuant to declaration of the Israeli government under Section 9 of the Law and Administration Ordinance, 5704-1948, Israel has had a declared state of emergency since its founding on May 15, 1948. The declared state of emergency enables the legislation and enforcement of special laws and regulations for the defense of the State. The Prevention of Terrorism Ordinance, enacted in 1948, and the Emergency Defence Regulations, enacted in 1945 by the Government of Mandatory Palestine and left in force after Israel's independence, are two such pieces of emergency legislation.

26.     Section 24 of the Prevention of Terrorism Ordinance, as originally enacted and as amended in 1980, made it perfectly clear that it is related to the defense needs created by the state of emergency by providing that the Ordinance shall "only apply in a period in which a state of emergency exists in the State by virtue of a declaration under section 9 of the Law and Administration Ordinance, 5708-1948."[13] Since the Prevention of Terrorism Ordinance is predicated on the existence of a valid declaration of a state of emergency, in my opinion it should not be interpreted as granting protection to private persons in the sense of the civil law of torts under the Civil Wrongs Ordinance. Rather, the relation of the statute to the state of emergency establishes the connection between the Prevention of Terrorism Ordinance and the protected interest of the State, as opposed to the protection of private persons.

---

[13]     Section 9 of the Law and Administration Ordinance, 5708-1948 has since been repealed. Since the Basic Law: The Government was first enacted in 1992, the power to declare state of emergency for a period of up to one year rests in principle with the Knesset. This is now pursuant to Section 38 of the Basic Law: The Government (as re-enacted in 2001). Section 38(e) of the Basic Law: The Government provides that the Knesset may cancel the state of emergency at any time. The emergency power had previously been vested in the Knesset under the Basic Law: The Government as originally enacted in 1992, Sections 49-50. Translation has been accessed at the Foreign Affairs Ministry website:
http://www.mfa.gov.il/MFA/MFAArchive/1990_1999/1992/4/Basic+Law-+The+Government+-1992-.htm.

27.    The power to enact or maintain in effect emergency regulations such as the
Defence Emergency Regulations is now governed by the Basic Law: The Government.  Section
39 (e) of the Basic Law: The Government provides that emergency regulations will be enacted,
and their provisions acted upon, only insofar as required by the state of emergency. The causes
for use of the emergency rule-making power are set forth in Section 39 (a) of the Basic Law: The
Government: **"the defence of the State, public security and the maintenance of supplies and
essential services**." Such provision clearly identifies the State and public security purposes of
emergency regulations.

28.    Specifically with regard to the provisions of Section 85 of the Defence
Emergency Regulations, Section 84 that precedes them explicitly defines the interests being
protected by Section 85 as the interest of the State, the Government, its Ministers and those
acting on its behalf.  Such intent is evident from the protected interests that are enumerated in the
definitions of "unlawful association" provided by Section 84:[14]

> any body of persons, whether incorporated or unincorporated and by whatsoever
> name (if any) it may from time to time be known, which –
>
> (a)    by its constitution or propaganda or otherwise advocates, incites or
> encourages any of the following unlawful acts, that is to say –
>
>> (i)    the overthrow by force or violence of the constitution of Israel or
>> the Government of Israel;
>>
>> (ii)    the bringing into hatred or contempt of, or the exciting of
>> disaffection against, the Government of Israel or any one of its ministers
>> in their official capacity;
>>
>> (iii)    the destruction of or injury to property of the Government of
>> Israel;
>>
>> (iv)    acts of terrorism directed against the Government of Israel or
>> directed against servants of the Government of Israel; or which has
>> committed or has claimed to have been responsible for, or to have been
>> concerned in, any such acts as are mentioned in sub-paragraph (ii), (iii), or
>> (iv) of this paragraph . . . .

---

[14] My translation, following the English original as amended.

The Defence Emergency Regulations § 85, then, though not technically contingent on the declared state of emergency, should be interpreted as protecting State and Governmental interests. It appears that the provisions of the Penal Law, §§ 145-148, fall within the same category. The protected interests under the Penal Law §§ 145-148 are as mentioned in paragraph 17 above, namely, the political order, the government, and state property.

29.     While the ascertainment of the intention of a statute to protect either the public interest or a private interest can be quite difficult, it is axiomatic that a statutory enactment that is intended for the protection of State and public interests is not deemed an enactment intended to impose duties on one class of persons for the protection of another class of persons in the meaning of the tort of breach of statutory duty. Justice Barak in **Vaknin**, *supra*, at 141, paragraph 36 of the judgment, elucidated this principle authoritatively as follows:

> [A]ny statute is intended, at the end of the day, for the benefit and protection of the individual, since the State only exists for the individuals in it. It would seem that this legal philosophy does not assist us in interpreting the provisions of section 63 of the Civil Wrongs Ordinance. This provision distinguishes between statutes intended for the benefit or protection of the individual and statutes not intended for the benefit or protection of the individual. We must give force to this distinction. It appears to me that a statute will be 'to the benefit or protection of another person' if the statute prescribes norms and levels of conduct intended to protect the interests of the individual. **Opposing such statutes are those which were not intended to protect the interests of the individual. These include those statutes aimed at protecting the interests of the State, of the government, and of the collective fabric of life, and the lifestyle of the nation.** Thus, for instance, it has been held that a statute that sets a standard of safety at work is a statute intended for the benefit of the employee, since it aims to protect the interests of the employee in his physical wellbeing. Similarly, legislation that aims at protecting a patent or trademark is legislation that aims to protect the interest of an individual, and which is intended for the individual's benefit (see Civ. App. 817/77 PDI 32, 12, 757). This is also the case with respect to statutes that impose duties on landlords towards statutory tenants. These duties are intended to protect the interests of the statutory tenant, and are duties intended for their benefit (see Civil Claim (Tel Aviv) 2843/64 P(M) 64, 225). **On the other hand, the criminal prohibition against treason is not intended to protect the interests of the individual but rather, aims to protect the interests of the State.** Similarly, the duty to vote in elections is intended to uphold democratic frameworks rather than to protect the interests of other members of the public.

**Vicarious Liability: Section 12 of the Civil Wrongs Ordinance**

30.     The FAC at ¶¶ 155-56 cites the provisions of Section 12 of the Civil Wrongs

Ordinance in support of an allegation that the Defendant Bank of China should be held liable in

tort for having assisted the Palestinian Islamic Jihad carry out the terrorist bombing that allegedly

injured Plaintiffs. The Ministry of Justice English text of Section 12 reads as follows:

> **12.     For the purpose of this Ordinance, any person who joins or aids
> in, authorises, counsels, commands, procures or ratifies any act done or
> to be done, or any omission made or to be made, by any other person
> shall be liable for such act or omission.**

It seems plain that the provision of Section 12 above requires that the person who is

aiding, joining in (abetting), authorizing or otherwise taking part in the civil wrong as provided

therein must have a subjective intent to commit the same act as the principal wrongdoer.  For

Section 12 liability it is not sufficient that a party may have merely assisted a person, who then

committed or procured others to commit a violent tortious act such as assault under the Civil

Wrongs Ordinance.  In C.A. 1636/98 **Rav Bariach Ltd. v. Havshush Vehicle Accessory**

**Trading House Ltd.**, Tak-El 2001(2) 387, the Court considered the meaning of Section 12 in the

context of assertions of contributory infringement of a patent by a supplier of components, and

held (Justice England, *per curiam*) that the meaning of Section 12 is that of the U.K. common

law rule on joint tortfeasors as stated in Clerk & Lindsell on Torts (18th ed. 2000) para. 4-108:

> **Where one person instigates another to commit a tort they are joint
> tortfeasors; so are persons whose respective shares in the commission of
> a tort are done in furtherance of a common design. "All persons in
> trespass who aid or counsel, direct, or join, are joint trespassers." But
> mere similarity of design on the part of independent actors, causing
> independent damage, is not enough; <u>there must be concerted action
> towards a common end</u>. A person who only facilitated (as opposed to
> procured) a tort would not be liable as a joint tortfeasor. [emphasis
> supplied].[15]**

---

[15] Justice England paragraphs 18 and 22 of the judgment.

That is to say, it does not state a cause of action under Section 12 for the Plaintiffs to allege that the Defendant Bank of China facilitated the activity of terrorist organizations by the very rendition of banking services to a terrorist operant. In order for the provision of Civil Wrongs Ordinance Section 12 to be proven to apply to the Defendant Bank of China, it will have to be shown that the Defendant Bank had joined the conspiracy to carry out the terrorist bombing, knowingly and in concert with the terrorist organization, thereby inflicting the alleged harm.

## Conclusion

31.     In my opinion, the FAC has not disclosed a cause of action against the Bank of China as stated in the FAC under Israeli law for any of negligence, breach of statutory duty, or vicarious liability under the Civil Wrongs Ordinance. My view of the insufficiency of the vicarious liability assertion under Section 12 of the Civil Wrongs Ordinance is based strictly on Israeli law and procedure.

Subject to that qualification this opinion is confined to the substantive law of torts in the domestic law of Israel and has not addressed the procedural or probative aspects of the case, any assertion of fact in the present case or the question of quantum of damages.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: March 1, 2009, at Tel-Aviv, Israel

_____
Peter Gad Naschitz
Naschitz, Brandes & Co., Advocates

- 23 -

"A"



# LAWS OF THE
# STATE OF ISRAEL

## NEW VERSION

*English Text, Prepared at the Ministry of Justice*

### VOL. 2

*(Up to date to December 31, 1972)*

PUBLISHED BY THE GOVERNMENT PRINTER

# CIVIL WRONGS ORDINANCE (NEW VERSION) *

## CHAPTER ONE: INTERPRETATION

1.  Subject to the Interpretation Ordinance [1], this Ordinance shall be interpreted in accordance with the principles of legal interpretation obtaining in England, and expressions used in it shall be presumed, so far as is consistent with their context, and except as may be otherwise expressly provided, to be used with the meaning attaching to the corresponding expressions in English law and shall be construed in accordance therewith **.

*Interpretation.*

2.  In this Ordinance —

*Definitions.*

"action" means any civil proceeding before a court and includes a set-off and a counterclaim;

"animal" includes birds, fish, insects and reptiles;

"child" includes grandchild, step-child and a child *en ventre sa mere*, and any illegitimate or adopted child, and in deducing any relationship which under the provisions of this Ordinance is included within the meaning of the expressions "parent" and "child" any illegitimate person and any adopted person shall be treated as the legitimate offspring of his mother and reputed father or, as the case may be, of his adopter;

"damage" means loss of life, or loss of, or detriment to, any property, comfort, bodily welfare, reputation or other similar loss or detriment;

---

\*   Published in *Dinei Medinat Yisrael (Nusach Chadash)* No. 10 of the 19th Nisan, 5728 (17th April, 1968), p. 266. Earlier version: *P.G.* of 1944, Suppl. I, p. 129; *P.G.* of 1947, Suppl. I, p. 40; *P.G.* of 1948, Suppl. I, p. 1; *Sefer Ha-Chukkim* of 5712, p. 340 — *LSI* vol. VI, p. 148; *Sefer Ha-Chukkim* of 5716, pp. 51 and 78 — *LSI* vol. X, pp. 48 and 73; *Sefer Ha-Chukkim* of 5718, p. 114 — *LSI* vol. XII, p. 132; *Sefer Ha-Chukkim* of 5723, p. 76 — *LSI* vol. XVII, p. 93; *Sefer Ha-Chukkim* of 5725, pp. 244 and 245 — *LSI* vol. XIX, p. 260. Amendments to New Version: *Sefer Ha-Chukkim* of 5728, p. 101 — *LSI* vol. XXII, p. 112; *Sefer Ha-Chukkim* of 5729, p. 280 — *LSI* vol. XXIII, p. 312; *Sefer Ha-Chukkim* of 5730, p. 124 — *LSI* vol. XXIV, p. 127.

1.   *Dinei Yisrael (Nusach Chadash)* No. 1, p. 2; *NV* vol. I, p. 5.

\*\*  According to the Law and Administration Ordinance, 5708—1948, as amended in 1972 (S. Ch. of 5732, p. 51), any "such provision of a Law as requires such Law or any expressions therein to be interpreted in accordance with English law or with principles of legal interpretation obtaining in England" is no longer binding.

"defendant" includes a defendant to a counterclaim or cross-action;

"employer" means a person who, in relation to another, has complete control of the way in which such other performs his work for such person and is not himself subject to any similar authority in respect of the same work, and "employee" means any person whose work is so controlled:

Provided that no person in the service of the State or of a local authority or of any other person shall be deemed to be an employer or employee of anyone else in such service;

"immovable property" means land, trees, houses, buildings, and walls or other constructions;

"injury" means any unlawful interference with a legal right;

"movable property" means any inanimate thing or any animal, and includes money, the produce of trees and vines, cereals, vegetables and other crops and water, whether severed from the land or not;

"occupier" means any person lawfully occupying, or entitled against the owner thereof to occupy or use, any immovable property, and if there is no such person then the owner of such property;

"parent" includes grandparent and step-parent;

"pecuniary damage" means any actual loss or expense which is capable of estimation in money and of which particulars can be given;

"plaintiff" includes a counterclaimant and a claimant in a cross-action;

"property" means immovable or movable property;

"wild animal" means any animal not usually kept in captivity or under the control of man in Israel.

## Chapter Two: Rights and Liabilities in Tort

**Civil wrong and right to remedy.**
3.   The matters in this Ordinance hereinafter enumerated shall be civil wrongs, and subject to the provisions of this Ordinance, any person who suffers any injury or damage by reason of any civil wrong committed in Israel shall be entitled as against the person committing or liable for such civil wrong to the remedy hereinafter specified.

**Trivial act.**
4.   An act which if repeated would not tend to establish an adverse claim and which is an act of which in the circumstances a person of ordinary sense and temper would not complain shall not be deemed to be a civil wrong.

6

5.   (a)  It shall be a defence in any action brought in respect of a civil wrong that the plaintiff knew and appreciated or must be taken to have known and appreciated the state of affairs causing the damage and voluntarily exposed himself or his property thereto.

*Voluntary exposure to risk.*

(b)  The provisions of this section shall not apply to any action brought in respect of any civil wrong when such wrong was due to the non-performance of a duty imposed upon the defendant by any enactment.

(c)  No child under the age of twelve years shall be deemed to be capable of knowing or appreciating such state of affairs or of voluntarily exposing himself thereto or of exposing his property thereto.

6.   It shall be a defence to any action brought in respect of a civil wrong other than negligence that the act or omission complained of was done or made under and in accordance with the provisions of any enactment.

*Act under enactment.*

7.   (a)  A public servant shall be responsible for any civil wrong committed by him, and, if sued therefor, he shall be sued in his personal capacity: Provided that, without prejudice to the provisions of sections 6 and 8, it shall be a defence to any action brought against any public servant other than an action for negligence that the act complained of was within the scope of his lawful authority or that it was done in good faith in purported exercise of his lawful authority.

*Public servant.*

(b)  No public servant shall be responsible for any civil wrong committed by any agent appointed by him or by any other public servant unless he has expressly authorised or ratified such civil wrong.

8.   No action shall be brought against any person constituting, or being a member of, any court or tribunal or against any person lawfully performing the duties of any such person, or against any other person performing judicial functions, including an arbitrator, in respect of any civil wrong committed by him in his judicial capacity.

*Judicial authority.*

9.   (a)  No action shall be brought against any person in respect of any civil wrong committed by such person when such person was under the age of twelve years.

*Minor.*

(b)  A person under the age of eighteen years may sue and, subject to the provisions of subsection (a), be sued in respect of a civil wrong: Provided that no action shall be brought against any such person in respect of any civil wrong when such wrong arises directly or indirectly out of any contract entered into by such person.

7

**Corporate body.**   10.   A corporate body shall not recover any compensation in respect of any civil wrong unless it has suffered damage thereby.

**Joint civil wrong doers.**   11.   When each of two or more persons is liable under the provisions of this Ordinance for any act and such act constitutes a civil wrong, such persons shall be jointly liable as joint civil wrong doers for such act and may be sued therefor jointly or severally.

**Liability of person joining in or procuring act.**   12.   For the purposes of this Ordinance, any person who joins or aids in, authorises, counsels, commands, procures or ratifies any act done or to be done, or any omission made or to be made, by any other person shall be liable for such act or omission.

**Liability of employer.**   13.   (a)   For the purposes of this Ordinance, an employer shall be liable for any act committed by his employee —

    (1)   which he has authorised or ratified; or

    (2)   which was committed by his employee in the course of his employment: Provided that —

        (a)   an employer shall not be liable for any act committed by any person not being another of his employees, to whom his employee has without his authority, express or implied, delegated his duty; or

        (b)   a person who is compelled by law to use the services of another person, in the choice of whom he has no discretion, is not liable for any act committed by that other in the course of such employment.

  (b)   An act shall be deemed to have been done in the course of an employee's employment if it was done by him in his capacity as an employee and whilst he was performing the usual duties of and incidental to his employment, notwithstanding that the act was an improper mode of performing an act authorised by the employer; but an act shall not be deemed to have been so done if is was done by an employee for his own ends and not on behalf of the employer.

  (c)   For the purposes of this section, "act" includes "omission".

**Liability of principal.**   14.   For the purposes of this Ordinance, any person who employs an agent, not being his employee, to do any act or class of acts on his behalf shall be liable for anything done by such agent in the performance of, and for the manner in which such agent does, such act or class of acts.

**Liability of party to contract.**   15.   For the purposes of this Ordinance, a person who enters into any contract with any other person, not being his employee or agent, to do any act on his behalf shall not be liable for any civil wrong arising during the doing of such act. This provision shall not apply if —

8

(1)  such person was negligent in the selection of such contractor, or

(2)  such person interfered with the work of the contractor in such a way as to cause the injury or damage, or

(3)  such person authorised or ratified the act causing injury or damage, or

(4)  such person was under any enactment responsible for the doing of an act the performance of which was delegated by him to an independent contractor;

(5)  the thing for the doing of which the contract was entered into was unlawful.

16.  Nothing in section 12, 14 or 15 shall affect the liability of any person for any act committed by such person, and nothing in section 13 shall affect the liability of any employee for any act committed by such employee.

*Saving of liability.*

17.  Whenever under the provisions of this Ordinance it is necessary to allege or prove knowledge, the knowledge of an agent or of an employee shall be deemed to be the knowledge of his principal or employer if such knowledge was acquired by the agent whilst acting for and on behalf of his principal, or was acquired by the employee in the course of his employment, in connection with the matter or thing in respect of which the knowledge is necessary.

*Knowledge of agent or employee.*

18.  (a)  No action in respect of any civil wrong committed before or during the subsistence of a marriage shall be brought by either party thereto or any person representing his or her estate against the other party thereto or any person representing his or her estate.

(b)  No party to a marriage shall be liable for any civil wrong committed by the other party thereto save under the provisions of sections 11 to 16.

*Spouse.*

19.  (a)  Subject to the provisions of this section, on the death of any person, all causes of action in respect of any civil wrong subsisting against or vested in him shall survive against, or, as the case may be, for the benefit of, his estate.

(b)  Where a cause of action survives as aforesaid for the benefit of the estate of a deceased person, the compensation recoverable for the benefit of the estate of that person shall, where the death of that person has been caused by the act or omission which gives rise to the cause of action, be calculated without reference to any loss or gain to his estate consequent on his death, except that a sum in respect of burial expenses may be included.

*Effect of death on cause of action.*

9

(c)   Where damage has been suffered by reason of any act or omission in respect of which a cause of action for a civil wrong would have subsisted against any person if that person had not died before or at the same time as the damage was suffered, there shall be deemed, for the purposes of this Ordinance, to have been subsisting against him before his death such cause of action in respect of that act or omission as would have subsisted if he had died after the damage was suffered.

(d)   The rights conferred by this Ordinance for the benefit of the estate of deceased persons shall be in addition to, and not in derogation of, any rights conferred on the dependants of deceased persons by this Ordinance or any other enactment.

**Insolvent estate.**  20.   In the event of the insolvency of an estate against which an action may be brought by virtue of section 19, any liability in respect of the cause of action shall be deemed to be a debt provable against the estate, notwithstanding that it is a demand in the nature of unliquidated damages arising otherwise than by a contract, promise or breach of trust.

**Bankrupt.**  21.   Notwithstanding anything contained in the Bankruptcy Ordinance, 1936 [1], a bankrupt may sue and be sued in respect of a civil wrong, but no action in respect thereof shall be brought on behalf of, or against, the estate of any bankrupt: Provided that —

(1)   the right of action in respect of any such wrong as caused pecuniary damage to the estate of a bankrupt shall pass to or be exercised by his trustee;

(2)   a judgment obtained against a bankrupt before the date of the receiving order, in respect of a civil wrong, shall be provable in the bankruptcy; and

(3)   this section shall be subject to the provisions of section 19.

**No assignment in tort.**  22.   The right to any remedy for, and any liability in respect of, any civil wrong shall not be assignable otherwise than by operation of law.

## CHAPTER THREE: CIVIL WRONGS
### Article One: Assault

**Assault.**  23.   Assault consists of intentionally applying force of any kind, whether by way of striking, touching, moving or otherwise, to the person of another, either directly or indirectly, without his consent, or

1.   *P.G. of 1936, Suppl. I, p. 21.*

with his consent if the consent is obtained by fraud, or attempting or threatening by any act or gesture to apply such force to the person of another if the person making the attempt or threat causes the other to believe upon reasonable grounds that he has the present intention and ability to effect his purpose.

For the purposes of this section, the expression "applying force" includes applying heat, light, electrical force, gas, odour or any other substance or thing whatever if applied in such a degree as to cause damage.

24.    In any action brought in respect of any assault, it shall be a defence —

<div style="text-align:right">Special defence.</div>

(1)    that the defendant acted for the protection of himself or another person against an unlawful use of force by the plaintiff, and that in so acting he did no more than was reasonably necessary for that purpose and the damage caused to the plaintiff by the assault was not disproportionate to the damage sought to be avoided;

(2)    that the defendant, being the occupier of any immovable property, or acting under the authority of such occupier, used a reasonable degree of force in order to prevent the plaintiff from unlawfully entering upon such immovable property or to eject the plaintiff therefrom after he had unlawfully entered or remained thereupon: Provided that, if the plaintiff did not enter, or attempt to enter, upon such immovable property by force, the defendant shall have requested the plaintiff to refrain from entering upon, or having entered upon, to depart from, such immovable property, and shall have given the plaintiff a reasonable opportunity of peaceably complying with his request;

(3)    the defendant, being entitled to the possession of any movable property, used a reasonable degree of force in order to defend his possession thereof, or if the plaintiff has wrongfully taken or detained such movable property from him, the defendant used a reasonable degree of force to retake possession thereof from the plaintiff: Provided that, if the plaintiff did not take or attempt to take such movable property by force, the defendant shall have requested the plaintiff to refrain from taking, or having taken, to restore to the defendant, such movable property, and shall have given the plaintiff a reasonable opportunity of peaceably complying with his request;

11

(4)   that the defendant was acting in the execution of or lawfully assisting in the execution of any warrant of arrest, search warrant, committal, order of commitment or writ of attachment issued by any court or other authority having jurisdiction thereto, provided that the act complained of was authorised by such warrant of arrest, search warrant, committal, order of commitment or writ of attachment but notwithstanding any defect in or in the issue of such warrant of arrest, search warrant, committal, order of commitment or writ of attachment;

(5)   that the plaintiff was of unsound mind or was suffering from infirmity of mind or body and that the force used was, or appeared to be, reasonably necessary for his own protection or for that of other persons and was exercised in good faith and without malice;

(6)   that the plaintiff and defendant were both soldiers of the Defence Army of Israel and the defendant acted under the authority of and in accordance with any law applicable to such Army;

(7)   that the defendant was the parent, guardian or school-master of the plaintiff or a person whose relationship to the plaintiff was similar to that of his parent, guardian or school-master, and administered to the plaintiff only such chastisement as was reasonably necessary for the purpose of correction;

(8)   that the defendant acted in good faith for what he had reason to believe to be for the benefit of the plaintiff but was unable before doing such act to obtain the consent of the plaintiff thereto, as the circumstances were such that it was impossible for the plaintiff to signify his consent or for some person in lawful charge of the plaintiff to consent on behalf of the plaintiff and the defendant had reason to believe that it was for the benefit of the plaintiff that he should not delay in doing such act.

**Liability for other person.**   25.   Notwithstanding anything contained in this Ordinance, no principal or employer shall be liable for any assault committed by his agent or employee unless he has expressly authorised or ratified such assault.

## Article Two: Imprisonment

**False imprisonment.**   26.   False imprisonment consists of unlawfully totally depriving any person of his liberty for any period of time by physical means or by a show of authority.

12

27.    In any action brought in respect of any false imprisonment it shall be a defence —

    (1)  that the defendant was acting in the execution of or lawfully assisting in the execution of any warrant of arrest, search warrant, committal, order of commitment or writ of attachment issued by any court or other authority having jurisdiction thereto, provided that the act complained of was authorised by such warrant of arrest, search warrant, committal, order of commitment or writ of attachment, but notwithstanding any defect in or in the issue of such warrant of arrest, search warrant, committal, order of commitment or writ of attachment;

    (2)  that the plaintiff was detained in lawful custody in accordance with the provisions of any enactment;

    (3)  that the plaintiff was of unsound mind or was suffering from some infirmity of mind or body and that the restraint was, or appeared to be, reasonably necessary for his own protection or for that of other persons and was exercised in good faith and without malice;

    (4)  that the act of which the plaintiff complains was an act for the non-performance of which the person performing such act would be liable to a penalty under the provisions of any enactment;

    (5)  that the plaintiff and defendant were both soldiers of the Defence Army of Israel and that the defendant acted under the authority of and in accordance with any law applicable to such Army;

    (6)  that the defendant was the parent, guardian or schoolmaster of the plaintiff or a person whose relationship to the plaintiff was similar to that of his parent, guardian or schoolmaster, and only temporarily deprived the plaintiff of his liberty for such time as was reasonably necessary for the purpose of correction.

*Special defence.*

28.    Notwithstanding anything contained in this Ordinance, no principal or employer shall be liable for the false imprisonment by his agent or employee or any other person unless he expressly authorised or ratified such imprisonment.

*Liability for other person.*

## Article Three: Trespass

29.    Trespass to immovable property consists of any unlawful entry upon, or any unlawful damage to or interference with, any such property

*Trespass to immovable property.*

by any person: Provided that no plaintiff shall recover compensation in respect of trespass to immovable property unless he has suffered pecuniary damage thereby.

**Onus of proof.**

30.    In any action brought in respect of any trespass to immovable property, the onus of showing that the act of which complaint is made was not unlawful shall be upon the defendant.

**Tresspass to movable property.**

31.    Trespass to movable property consists of unlawfully taking goods out of the possession of another or forcibly interfering with them whilst they are in his possession: Provided that no plaintiff shall recover compensation in respect of any trespass to movable property unless he has suffered pecuniary damage thereby.

**Onus of proof.**

32.    In any action brought in respect of any trespass to movable property, the onus of showing that the act of which complaint is made was not unlawful shall be upon the defendant.

**Mistake as to ownership or right of possession.**

33.    Interference with the property of another is not excused by mistake, even in good faith, as to the ownership or the right of possession, or by an intention to act for the true owner's benefit: Provided that —

(1)    a carrier or other person undertaking the carriage or custody of goods as a public service does not commit a trespass by dealing with goods in the ordinary way of that service and solely by the direction and on behalf of a person who delivers those goods to him for that purpose and whom he in good faith believes to be entitled to deal with those goods; and

(2)    a workman or employee does not commit a trespass by dealing with any property in the ordinary way of his employment and in a manner authorised as between himself and his employer and which he in good faith believes his employer to be entitled to authorise.

**Mere claim of right not trespass.**

34.    The mere assertion of a right to deal with property or to prevent another from dealing with it is not a trespass.

### Article Four: Negligence

**Negligence.**

35.    Where a person does some act which in the circumstances a reasonable prudent person would not do, or fails to do some act which in the circumstances such a person would do, or fails to use such skill or to take such care in the exercise of any occupation as a reasonable prudent person qualified to exercise such occupation would in the

14

circumstances use or take, then such act or failure constitutes carelessness and a person's carelessness as aforesaid in relation to another person to whom he owes a duty in the circumstances not to act as he did constitutes negligence. Any person who causes damage to any person by his negligence commits a civil wrong.

36.   For the purpose of section 35, every person owes a duty to all persons whom, and to the owner of any property which, a reasonable person ought in the circumstances to have contemplated as likely in the usual course of things to be affected by an act, or failure to do an act, envisaged by that section.

*Duty towards all persons.*

37.   The duty under sections 35 and 36 of the owner or occupier of any immovable property in respect of the condition, maintenance or repair thereof shall not obtain towards a person who entered the property as a trespasser unless the plaintiff proves that he entered in good faith and without intent to commit an offence or a civil wrong.

*Duty of owner of immovable property towards trespasser. S. Ch. of 5730, p. 124.*

37A.   (a)   The duty under sections 35 and 36 in respect of the condition, maintenance, repair or use of a military area shall not obtain towards a person who entered it as a trespasser unless the plaintiff proves that he entered in good faith and without intent to commit an offence or a civil wrong and that the person in charge of that area or the person acting on his behalf at the place of entry knew of his presence in the area at the time the damage was caused.

*Duty towards trespasser in military area. S. Ch. of 5730, p. 124.*

(b)   In this section, "military area" means —

(1)   immovable property occupied by the Defence Army of Israel or by some other branch of the Defence Establishment approved by the Minister of Defence for this purpose;

(2)   immovable property used for a security purpose and at the entrance to which a guard has been posted or entry to which is restricted by a notice displayed outside it;

(3)   immovable property on which installations are situated intended to prevent entry into or exit from Israel; for this purpose, a certificate from a person empowered in that behalf by the Minister of Defence that the installation is intended to prevent entry into or exit from Israel shall be conclusive evidence of such fact.

(c)   This section shall only apply during a period in which a state of emergency exists in the State by virtue of a declaration under section 9 (a) of the Law and Administration Ordinance, 5708—1949.

<div style="float:left; width: 20%;">

Onus of proof of negligence when damage caused by dangerous things.

</div>

38.   In any action brought in respect of any damage in which it is proved that such damage was caused by any dangerous thing, other than fire or an animal, or by the escape of anything which if it escapes is liable to cause damage, and that the defendant was the owner of, or the person in charge of, such thing or the occupier of the property from which such thing escaped, the onus shall be upon the defendant to show that there was no carelessness for which he is liable in connection with such dangerous thing or the escape of such thing.

<div style="float:left; width: 20%;">

Onus of proof of negligence when damage caused by fire.

</div>

39.   In any action brought in respect of any damage in which it is proved that such damage was caused by, or in consequence of, any fire, and that the defendant kindled such fire or was liable for the kindling of such fire or was the occupier of the immovable property or the owner of the movable property on which such fire originated, the onus shall be upon the defendant to show there was no carelessness for which he is liable in connection with the origin or spread of the fire.

<div style="float:left; width: 20%;">

Onus of proof of negligence when damage caused by animal.

</div>

40.   In any action brought in respect of any damage in which it is proved —

(1)   that such damage was caused by a wild animal, or by an animal, other than a wild animal, which the defendant knew, or must be presumed to have known, had a propensity to do the act which caused damage; and

(2)   that the defendant was the owner of, or the person in charge of, such animal, the onus shall be upon the defendant to show that there was no carelessness for which he is liable in connection with such animal.

<div style="float:left; width: 20%;">

Onus of proof of negligence where facts speak for themselves.

</div>

41.   In any action brought in respect of any damage in which it is proved that the plaintiff had no knowledge or means of knowledge of the actual circumstances which caused the occurrence which led to the damage and that the damage was caused by some property of which the defendant had full control, and it appears to the court that the happening of the occurrence causing the damage is more consistent with the defendant having failed to exercise reasonable care than with his having exercised such care, the onus shall be upon the defendant to show that there was no carelessness for which he is liable in connection with the occurrence which led to the damage.

## Article Five:  Nuisances

<div style="float:left; width: 20%;">

Public nuisance.

</div>

42.   A public nuisance consists of some unlawful act, or omission to discharge a legal duty, where such act or omission endangers the life,

16

safety, health, property or comfort of the public or obstructs the public in the exercise of some common right.

43.   No action shall be brought in respect of a public nuisance save —   *Action for public nuisance.*

    (1)   by the Attorney General or his representative for injunction;

    (2)   by any person who has suffered pecuniary damage thereby.

44.   (a)   A private nuisance consists of any person so conducting himself or his business or so using any immovable property of which he is the occupier as materially to interfere with the reasonable use and enjoyment, having regard to the situation and nature thereof, of the immovable property of any other person : Provided that no person shall recover compensation in respect of any private nuisance unless he shall have suffered damage thereby.   *Private nuisance.*

    (b)   The provisions of this section shall not apply to any interference with daylight.

45.   It shall be a defence to any action brought in respect of any private nuisance that the act complained of was done under the terms of any covenant or contract binding upon the plaintiff which inures for the benefit of the defendant.   *Special defence.*

46.   It shall not be a defence to any action brought in respect of a private nuisance merely that the nuisance existed before the plaintiff's occupation or ownership of the immovable property affected thereby.   *Existing nuisance.*

47.   The provisions of sections 42 to 46 shall be in addition to, and not in derogation of, any provisions as to nuisance laid down by any other enactment.   *Saving of other laws.*

48.   Any person who, by any obstruction or otherwise, prevents the enjoyment by the owner or occupier of any immovable property of a reasonable amount of daylight, having regard to the situation and nature of such immovable property, when such light has been continuously enjoyed by such owner or occupier or his or their predecessors in title, otherwise than under the terms of any covenant or contract, for a period of not less than fifteen years immediately preceding such obstruction or prevention commits a civil wrong.   *Interference with daylight.*

48A.   Where any property provides support to neighbouring property, the doing of any thing which prevents or denies such support shall be a civil wrong.   *Prevention of support. S. Ch. of 5729. p. 280.*

**Use required in the public interest.**
*S. Ch.* of 5729, p. 280.

48B.   Any such use of immovable property as is required in the public interest shall not constitute a nuisance within the meaning of this article even if it causes damage to neighbouring property or deprives the owner of neighbouring property of the full enjoyment thereof, provided that the damage remains within tolerable proportions and that the user takes reasonable steps to reduce it as far as possible. However, the Court may award compensation — either in the form of a one-time payment or of recurrent payments — if the owner of the property has suffered pecuniary damage.

### Article Six: Misappropriation

**Unlawful detention of property.**

49.   Unlawful detention consists of the unlawful withholding of any movable property from any person entitled to the immediate possession thereof.

**Onus of proof.**

50.   In any action brought in respect of any unlawful detention the onus of proving that the withholding was lawful shall be upon the defendant.

**Return of detained property.**

51.   In any action brought in respect of any unlawful detention the court may, having regard to the circumstances of the case, order the return of the property detained in addition to, or in substitution for, any other remedy provided by this Ordinance.

**Conversion.**

52.   Conversion consists in the defendant's wrongfully converting to his own use movable property to the possession of which the plaintiff is entitled, by taking it away, detaining it, destroying it, delivering it to a third person or otherwise depriving the plaintiff of it.

**Special defence.**
*S. Ch.* of 5728, p. 101.

53.   In any action brought in respect of the conversion of any movable property it shall be a defence that the defendant purchased such property in good faith in accordance with section 34 of the Sale Law, 5728—1960 [1].

***Jus tertii* to be no defence.**

54.   In any action brought in respect of the conversion of any movable property the defendant shall not by way of defence set up against the person entitled to the immediate possession of such property the right of any third person.

**Return of converted property.**

55.   In any action brought in respect of the conversion of any movable property the court may, having regard to the circumstances of the case, order the return of the property converted in addition to, or in substitution for, any other remedy provided by this Ordinance.

1.   *Sefer Ha-Chukkim* of 5728, p. 98; *LSI* vol. XXII, p. 112.

## Article Seven: Deceit

56.   Fraud consists of a false representation of fact, made with the knowledge that it is false or without belief in its truth or recklessly, careless whether it be true or false, with intent that it shall be acted upon by the person deceived: Provided that no action shall be brought in respect of any such representation unless it was intended to and did deceive the plaintiff and he has acted upon it and has thereby suffered pecuniary damage.

*Fraud.*

57.   No action shall be brought in respect of a representation as referred to in section 56, made in relation to the character, conduct, credit, ability, trade or dealings, of any person in order to obtain for him credit, money or goods, unless it is in writing and signed by the defendant himself.

*No action in respect of certain kinds of fraud.*

58.   (a)   Injurious falsehood consists of the publication maliciously by any person of a false statement, whether oral or otherwise, concerning the trade, occupation or profession, or the goods, or the title to property, of any other person: Provided that no person shall recover compensation in respect of any such publication unless he has suffered pecuniary damage thereby.

*Injurious falsehood.*

(b)   For the purposes of this section, "publication" has the same meaning as it has in section 2 of the Defamation (Prohibition) Law, 5725—1965 [1].

59.   Any person who by imitating the name, description, sign or label or otherwise, causes or attempts to cause any goods to be mistaken for the goods of another person, so as to be likely to lead an ordinary purchaser to believe that he is purchasing the goods of such other person, commits a civil wrong against such other person: Provided that no person commits a civil wrong by reason only that he uses his own name in connection with the sale of any goods.

*Passing off*

## Article Eight: Malicious Prosecution

60.   Malicious prosecution consists of actually, maliciously and without reasonable and probable cause, instituting or carrying on against any person criminal, bankruptcy or winding-up proceedings, where such proceedings caused scandal to the credit or reputation of, or possible loss of liberty by, such person, and terminated, if in fact they were capable of so terminating, in favour of such person: Provided that no action for malicious prosecution shall be brought against any

*Malicious prosecution.*

1.   *Sefer Ha-Chukkim* of 5725, p. 240; *LSI* vol. XIX, p. 254.

person by reason only that he furnished information to some competent authority by whom any proceedings were instituted.

**Bar to action for malicious prosecution.**

61.   Notwithstanding anything contained in this Ordinance, no principal or employer shall be liable for any malicious prosecution instituted by his agent or employee unless he has expressly authorised or ratified such prosecution.

## Article Nine: Causing Breach of Contract

**Unlawfully causing breach of contract.**

62.   (a)   Any person who knowingly and without sufficient justification causes any other person to break a legally binding contract with a third person commits a civil wrong against such third person: Provided that such third person shall not recover compensation in respect of such civil wrong unless he has suffered pecuniary damage thereby.

(b)   For the purposes of this section, the relationship created by marriage shall not be deemed to be a contract, and a strike or lockout shall not be deemed to be a breach of contract.

## Article Ten: Breach of Statutory Duty

**Breach of statutory duty.**

63.   (a)   Breach of a statutory duty consists of the failure by any person to perform a duty imposed upon him by any enactment other than this Ordinance, being an enactment which, on a proper construction thereof, was intended to be for the benefit or protection of any other person, whereby such other person suffers damage of a kind or nature contemplated by such enactment: Provided that such other person shall not be entitled by reason of such failure to any remedy specified in this Ordinance if, on a proper construction of such enactment, the intention thereof was to exclude such remedy.

(b)   For the purposes of this section, an enactment shall be deemed to be for the benefit or protection of any person if it is an enactment which, on a proper construction thereof, is intended for the benefit or protection of that person or of persons generally, or of any class or description of persons to which that person belongs.

## CHAPTER FOUR: FAULT

**Causing damage by fault.**

64.   "Fault" means any act of any person, or failure by any person to do an act, being a civil wrong under this Ordinance, or being a civil wrong if damage is caused thereby, or being carelessness which is the cause of damage to that person himself, and a person shall be deemed to cause damage by his fault when the fault was the cause or one of

20

the causes of the damage: Provided that such person shall not be so deemed if —

> (1)   the damage was due to the happening of some extraordinary natural occurrence which a reasonable person would not have anticipated and the consequences of which could not have been avoided by the exercise of reasonable care; or
>
> (2)   it was the fault of some other person which was the decisive cause of the damage; or
>
> (3)   he is a child under the age of twelve years and is the person to whom the damage was caused after he had been invited or permitted by some other person, who caused the damage, to be upon any property upon or in connection with which the damage occurred, or to be so near to such property as in the usual course of things to be likely to be affected by the fault of that person.

65.   Where a defendant has caused damage by his fault, but his fault was brought about by the conduct of the plaintiff, the court may exempt him from liability to pay compensation or may reduce the amount of compensation payable, as the court may think just.

*Conduct of plaintiff.*

66.   Where a plaintiff and a defendant have both caused the damage by their fault but the fault of the plaintiff was brought about by the conduct of the defendant, the court may increase the compensation which would have been payable by the defendant if section 64 had not been enacted to any amount not exceeding the amount which would have been payable by the defendant if the plaintiff had not caused the damage by his fault.

*Conduct of defendant.*

67.   For the purposes of sections 64 to 66, references to the fault of any person (save where the context otherwise requires) include the fault of any other person for which the person first referred to in this section is liable.

*Fault of person includes fault of other person for which first-mentioned person is liable.*

68.   (a)   Where any person suffers damage as a result partly of his own fault and partly of the fault of any other person, a claim for compensation shall not be defeated by reason of the fault of the person suffering the damage but the compensation recoverable in respect thereof shall be reduced to such extent as the court thinks right and just having regard to the claimant's share in the responsibility for the damage: Provided that this subsection shall not operate to defeat any defence arising under a contract, and where any contract or law providing for

*Contributory fault.*

the limitation of liability is applicable to the claim, the amount of compensation recoverable by the claimant shall not exceed the maximum limit so applicable.

(b) Where compensation is reduced by virtue of subsection (a), the court shall find and record the total compensation which would have been recoverable had the claimant not been at fault.

(c) The provisions of sections 11 and 83 shall apply in any case where two or more persons are liable, or would, if they had been sued, be liable, by virtue or subsection (a) in respect of the damage suffered by any person.

**Contributory fault causing death.**

69. Where any person dies as a result partly of his own fault and partly of the fault of any other person and, if an action were brought for the benefit of the estate under section 19, the compensation recoverable would be reduced under section 68 (a), any compensation recoverable in an action brought for the benefit of the dependants of that person under section 78 shall be reduced to a proportionate extent.

**Plea of prescription.**

70. Where, in any case to which section 68 (a) applies, one of the persons at fault avoids liability to any other such person or to his legal personal representative by pleading any rule of prescription, he shall not be entitled to recover any compensation or contribution from that other person or representative by virtue of the said section.

## CHAPTER FIVE: REMEDIES FOR CIVIL WRONGS

**All courts competent to grant remedy.**

71. Every civil court shall within the limits of its jurisdiction have power to grant remedies for civil wrongs in accordance with this Ordinance, subject to the provisions of any statute applying to such court, and it may grant an injunction in respect of any civil wrong notwithstanding that no compensation or other relief is claimed or granted together therewith.

**Injunctions.**

72. An injunction may be mandatory or prohibitory, temporary or perpetual.

**Conditions of grant of injunction.**

73. The court shall not grant a temporary injunction unless it is satisfied, by affidavit or otherwise, that there is a serious question to be tried at the hearing, that there is a probability that the plaintiff is entitled to relief and that unless a temporary injunction is granted it will be difficult or impossible to do complete justice at a later stage.

**No injunction to be granted in certain cases.**

74. No injunction shall be granted when, in the opinion of the court, the injury or damage to the plaintiff is small and is capable of being

22

estimated in money and can be adequately compensated by a money payment and it would be oppressive to the detendant to grant an injunction; but compensation may be awarded in any such case.

75.   The provisions of sections 72 to 74 shall be in addition to, and not in derogation of, any of the powers exercisable by the courts as to injunctions under any other statute.

*Saving of powers.*

76.   Compensation may be awarded either alone, or in addition to or in substitution for, an injunction: Provided that —

*Compensation.*

(1)   where the plaintiff has suffered damage, compensation shall only be awarded in respect of such damage as would naturally arise in the usual course of things and which directly arose from the defendant's civil wrong; and

(2)   if the plaintiff has suffered pecuniary damage, no compensation in respect thereof shall be awarded unless the plaintiff has given particulars of such damage in or together with his statement of claim.

77.   (a)   Subject to the provisions of sections 83 to 85, no person who has recovered compensation or other relief in respect of any civil wrong, nor any person claiming through or under such person, shall recover any further compensation in respect of such civil wrong.

*Compensation only to be recovered once.*

(b)   No person shall recover any compensation or other relief in respect of any civil wrong if such civil wrong also constituted a breach of any contract, or of an obligation resembling those created by contract, and compensation for such breach of contract or obligation has been awarded by any court, tribunal or arbitrator to such person or to any person through or under whom such person claims.

(c)   No person shall recover any compensation in respect of any breach of contract, or of an obligation resembling one created by contract, if such breach also constitutes a civil wrong and compensation or other relief has been awarded for such civil wrong by any court to such person or to any person through or under whom such person claims.

78.   Where the death of any person is caused by any civil wrong and such person would, if death had not ensued, have been entitled at the time of his death under the provisions of this Ordinance to compensation in respect of bodily injury caused to him by such civil wrong, the spouse, parent and child of such deceased person shall be entitled to compensation from the person responsible for such civil wrong.

*Right of dependants to compensation.*

23

**Persons entitled to bring action.**    79.    An action for compensation under section 78 shall be brought by the executor, administrator or heirs of the deceased person for the benefit of the spouse, parent and child, or such of them as may be in existence, of the deceased person. If no action is brought by such executor, administrator or heirs within six months of the death of the deceased person, any of the persons for whose benefit the action could have been brought by the executor, administrator or heirs may bring it in the name or names of all or any of them.

**Compensation and calculation thereof.**    80.    In an action under section 78, particulars shall be given of the persons for whose benefit such action is brought, and of the pecuniary loss suffered by such persons respectively owing to the death of the deceased person; and compensation shall be awarded in respect of the pecuniary loss which has been or will be actually suffered by them, including the burial expenses of the deceased person. After any costs not recovered from the defendant have been deducted from the amount of the compensation, the court shall, at the trial, determine the share of each of the persons entitled in the residual amount.

**Sums not to be taken into account.**    81.    In assessing compensation —

     (1)    any sum received or receivable on the death of the deceased under any contract of insurance; and

     (2)    any sum paid or payable in respect of mourning for him shall not be taken into account.

**Compensation and National Insurance benefits.**    82.    (a)    A person insured under Part Two of the National Insurance Law, 5714—1953 [1] (hereafter in this chapter referred to as "the Law"), including a dependant of such person, within the meaning of section 22 (b) of the Law, who is entitled under this Ordinance, in consequence of one event, both to compensation from the employer and to a benefit under Part Two of the Law shall have the amount of the benefit deducted from the amount of compensation which would be due to him from his employer but for this section.

     (b)    For the purposes of this section —

"benefit" means the monetary value of a benefit, other than a benefit in kind, which has been or is due to be given under Part Two of the Law, and includes an injury benefit equivalent payable under section 38 of the Law; a benefit reduced or denied in consequence of any act or omission on the part of the employee or not given by reason of an option for another benefit under the Law shall be deemed

1.    *Sefer Ha-Chukkim* of 5714, p. 6; *LSI* vol. VIII, p. 4.

to have been given, or to be due to be given, in full; provisions enacted by the Minister of Labour under section 49 (b) of the Law for the capitalisation of pensions or for the calculation of the monetary value of benefits in kind shall apply also to the determination of the monetary value of benefits for the purposes of this subsection;

"employer" means the person liable under the Law to pay contributions for an insured person and includes a person for whose acts the employer is liable under section 13 of this Ordinance.

(c)   In circumstances as referred to in subsection (a), the employer shall not, for the purposes of section 70 of the Law, be regarded as a third party rights against whom are transferred to the National Insurance Institute.

83.   (a)   Where damage is suffered by any person as a result of a civil wrong, judgment recovered against a civil wrong doer in respect of that damage shall not be a bar to an action against any other person who would, if sued, have been liable as a joint civil wrong doer in respect of the same damage.

*Claim and indemnity in case of joint civil wrong doers.*

(b)   If more than one action is brought in respect of the same damage by the person by whom it was suffered, or for the benefit of the estate, or of the spouse, parent or child, of that person, against civil wrong doers liable in respect of the damage (whether as joint civil wrong doers or otherwise), the sums recoverable under the judgments given in those actions by way of compensations shall not in the aggregate exceed the amount of the compensation awarded by the judgment first given which is not reversed on appeal, or as varied on appeal; and in any of those actions, other than that in which judgment is first given as aforesaid, the plaintiff shall not be entitled to costs unless the court is of the opinion that there was reasonable ground for bringing the action; where the judgment first given is given against an employer, within the meaning of section 82, in circumstances as referred to therein, the amount of the compensation awarded by the judgment first given shall, for the purposes of this subsection, be replaced by the amount which would have been awarded but for section 82.

84.   (a)   Any civil wrong doer liable in respect of the damage may recover contribution from any other civil wrong doer who is, or would if sued have been, liable in respect of the same damage, whether as a joint civil wrong doer or otherwise, so, however, that no person shall

*Indemnity as between civil wrong doers.*

25

be entitled to recover contribution under this subsection from any person entitled to be indemnified by him in respect of the liability in respect of which the contribution is sought.

(b)  In any proceedings for contribution under this section, the amount of the contribution recoverable from any person shall be such as may be found by the court to be just and equitable having regard to that person's responsibility for the damage; and the court shall have power to exempt any person from liability to make contribution, or to direct that the contribution to be recovered from any person shall amount to a complete indemnity.

Definition.

85.    "Civil wrong" in sections 83 and 84 means a civil wrong whether a criminal offence or not, and nothing in those sections shall affect any criminal proceedings against any person in respect of any wrongful act or render enforceable any agreement for indemnity which would not have been enforceable if those sections had not been passed.

Insurance not to be taken into account in assessing compensation.

86.    In assessing any compensation payable by reason of any civil wrong, any sum paid or payable under any contract of insurance in connection with such civil wrong shall not be taken into account.

Compensation for defamation published in a newspaper.

87.    (a)  If a successful plaintiff in an action brought against the proprietor of a newspaper in respect of the publication in such newspaper of defamatory matter makes it appear to the court before which the action was heard that he is not able to procure satisfaction of the judgment by way of execution against the immovable or movable property of the defendant, it shall be lawful for the court to order that the judgment be enforced against the signatories of any bond given by or on behalf of the defendant under section 5(1)(d) of the Press Ordinance[1] and to order execution to be levied against the security given by the signatories of such bond: Provided that the liability of the signatories shall in no case exceed their liabilities under such bond.

(b)  A plaintiff as referred to in subsection (a) shall serve on the Minister of Finance a copy of any order of the court made under this section.

(c)  The Minister of Justice may make regulations for regulating the practice and procedure and prescribing the fees to be paid in respect of any proceedings under this section.

Civil wrong which is also a criminal offence.

88.    It shall be no bar to any action in respect of a civil wrong, that the facts upon which such action is based constitute a criminal offence; but when, at any stage of the proceedings, it appears to the court before

1.  *Laws of Palestine* vol. II, cap. 116, p. 1214.

26

which the action is pending that those facts constitute, or may constitute, a felony, the court shall stay further proceedings until it is satisfied that either those facts have been reported to the police or the police is aware of those facts.

89.    For the purposes of the period of presciption in an action for a civil wrong, "the day on which the cause of action accrued" means —

*Commencement of period of prescription.*

(1)   where the cause of action is an act or omission — the day on which such act or omission occurred or, if the act or omission continued, the day on which it ceased;

(2)   where the cause of action is damage caused by an act or omission — the day on which such damage occurred or, if the damage was not discovered on the day on which it occurred, the day on which the damage was discovered: Provided that in the latter case the action shall be barred by prescription unless it is brought within ten years from the day on which the damage occurred.

## CHAPTER SIX: MISCELLANEOUS

90.    Nothing in this Ordinance shall be deemed to affect any jurisdiction in Admiralty vested in any court in Israel, or the provisions of the Civil Procedure Amendment (The State as a Party) Law, 5718—1958 [1], or of an enactment repealed by it.

*Saving of laws.*

91.    No court other than a Muslim Religious Court or a Tribal Court shall award *diyet*; and a Muslim Religious Court or a Tribal Court shall not award *diyet* in respect of any act if an award of compensation under this Ordinance has been made in respect of that act, and a court shall not award compensation under this Ordinance in respect of any act if an award of *diyet* has been made in respect of that act.

*Provisions as to the award of diyet.*

92.    The laws set forth in the Schedule shall cease to have effect in so far as they are repugnant to, or inconsistent with, the provisions of this Ordinance.

*Repeal and saving.*

93.    This New Version shall come into force on the 9th Tishri, 5729 (1st October, 1963).

*Commencement.*

1.   *Sefer Ha-Chukkim* of 5718, p. 118; *LSI* vol. XII, p. 138.

*SCHEDULE*

(Section 92)

The following articles of the Mejelle:

Articles 1 to 100;

Article 482;

Articles 545 to 548;

Articles 550, 551 and 556;

Article 865;

Articles 881 to 940;

Article 1071;

Article 1087;

Articles 1192 to 1223;

Articles 1661, 1673 and 1675.

28