## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SHERYL WULTZ, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 08-cv-1460 (RCL) |
| | ) | |
| ISLAMIC REPUBLIC OF IRAN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION

## I.    INTRODUCTION

This case arises out of the suicide bombing of a restaurant in Tel Aviv, Israel by members of the Palestinian Islamic Jihad ("PIJ") on April 17, 2006. Plaintiffs are the estate and family members of Daniel Wultz, an American citizen killed in the attack. They allege that defendant Bank of China, Ltd. ("BOC") executed dozens of wire transfers on behalf of the PIJ, funneling money that was used in the planning and execution of terrorist attacks between senior PIJ leadership in Iran and Syria and officers and agents of that organization. Based on these allegations, plaintiffs assert that BOC substantially increased PIJ's ability to plan, fund and facilitate the specific attack that killed Mr. Wultz, and they set forth claims for relief under the federal Antiterrorism Act, 18 U.S.C. § 2331 *et seq.* ("ATA"), and Israeli law. Defendant BOC moved to dismiss this action on several grounds, which the Court previously denied. Memorandum Opinion, Oct. 20, 2010 [83] ("Mem. Op.").

BOC now moves the Court to reconsider its decision or, in the alternative, to certify an issue for interlocutory appeal. Specifically, BOC asks the Court to re-evaluate its determination

that BOC is subject to personal jurisdiction in the District of Columbia. Defendant maintains that the Court was mistaken in permitting plaintiffs to invoke the nationwide service of process provision in the ATA because that statute's language ties its grant of service explicitly to its provision of venue. BOC argues that this language renders the service provision inapplicable unless plaintiffs can satisfy the ATA's venue requirements, which all parties agree they cannot. Thus, the argument goes, because nationwide service cannot be invoked, this Court's constitutional ruling concerning BOC's contacts with the United States as a whole lacks proper foundation and must be revisited. For the reasons set forth below, the Court grants defendant's motion and holds that it lacks personal jurisdiction over BOC. The Court, pursuant to plaintiffs' request, thus severs the claims against defendant BOC, and transfers those claims to the United States District Court for the Southern District of New York.

## II.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs first brought this suit in August of 2008, Complaint, Aug. 22, 2008 [1], and filed their Amended Complaint in early 2009. First Amended Complaint, Jan. 13, 2009 [12] ("FAC"). A few months later, BOC moved to dismiss the FAC, asserting that (1) plaintiffs lacked standing to bring this suit, (2) the Court could not assert subject matter jurisdiction because the case involved political questions, (3) the Court lacked personal jurisdiction over BOC, and (4) plaintiffs could not state claims for relief under either the ATA or Israeli law. Motion to Dismiss the First Amended Complaint, Mar. 5, 2009 [15] ("MTD Br."). With regard to personal jurisdiction, BOC argued that the Court lacked jurisdiction over it under the Due Process Clause of the Constitution, which requires plaintiffs to show that BOC "purposefully established 'minimum contacts with [the District of Columbia] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Helmer v.*

*Doletskaya*, 393 F.3d 201, 205 (D.C. Cir. 2004) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); alterations in original). This standard requires plaintiffs to establish that BOC had "minimum contacts . . . aris[ing] from some act" by which it purposefully availed itself of "the privilege of conducting activities with the forum . . . thus invoking the benefits and protections of its laws." *Gomez v. Aragon*, 705 F. Supp. 2d 21, 24 (D.D.C. 2010) (quotations omitted). In its motion, defendant argued that plaintiffs could not establish—either through factual evidence or reliance on the allegations in the FAC—that BOC had *any* contacts with D.C., much less those "minimum contacts" necessary to support jurisdiction. MTD Br. at 13–18.

In response, plaintiffs conceded that, as a factual matter, they could not establish any contact that defendant had with this forum. Memorandum in Opposition to Motion to Dismiss 30, May 26, 2009 [31] ("MTD Opp."). Instead, plaintiffs relied upon the ATA's provision of nationwide service, *id*. at 29–30, which permits "[p]rocess . . . [to] be served in any district where the defendant resides, *is found*, or has an agent." 18 U.S.C. § 2334(a) (emphasis added). Because the ATA permits nationwide service of process, plaintiffs argued that they need only show that defendant has minimum contacts with the United States as a whole, rather than with the D.C. specifically. *See Reese Bros. v. USPS*, 477 F. Supp. 2d 31, 37–38 (D.D.C. 2007) ("When statutes include congressional authorization of nationwide service of process . . . minimum contacts with the United States generally satisfies personal jurisdiction.").

BOC foresaw this argument in its opening brief, and set forth two responses: first, BOC asserted that plaintiff could not state a claim under the ATA, and thus could not invoke the Act's nationwide service of process provision, MTD Br. at 13–14; and second, BOC argued that the national contacts test had only been invoked against "shadowy international terrorist organization[s]," and thus was inapplicable in this case because BOC is an established institution

with ties to the United States. *Id*. at 14–15. In addition, in its briefing on reply BOC raised an additional criticism of plaintiffs' exclusive reliance on the ATA, Reply to Opposition to Motion to Dismiss 4–10, July 24, 2009 [42] ("MTD Reply"), which the Court understood as an objection on the grounds of improper venue. Mem. Op. at 41. Plaintiffs then filed a sur-reply addressing the supplemental jurisdiction and venue arguments that BOC raised in its reply. Plaintiffs' Surreply, Oct. 20, 2010 [80] ("MTD Sur-reply").

In its Memorandum Opinion, the Court denied BOC's motion on all grounds, holding that "plaintiffs have standing, plaintiffs' claims do not raise nonjusticiable political questions, the Bank is not entitled to sovereign immunity, the Court has personal jurisdiction over the Bank, venue is proper, plaintiffs have adequately pled claims upon which relief may be granted, and plaintiffs have not pled duplicative claims." Mem. Op. at 3. With respect to the arguments concerning jurisdiction, the Court found that by invoking the nationwide service provision of the ATA, *id*. at 23, plaintiffs could establish jurisdiction by serving defendant BOC anywhere in the United States and successfully alleging "'merely a colorable claim under the [ATA].'" *Id*. at 28 (quoting *Burnett v. Al Baraka Inv. & Dev. Corp.*, 274 F. Supp. 2d 86, 97–98 (D.D.C. 2003)).[1] Turning to defendant's argument that the ATA's service provision could only alter the "minimum contacts" test in cases involving what defendant referred to as "shadowy international terrorist organization[s]," the Court noted that while the cases listed in BOC's brief may have involved such groups, "[n]one of [those cases] support the proposition that a national-contacts test applies *only* to terrorist organizations." *Id*. at 31. The Court thus applied the national-contacts test, and determined that the extensive business conducted by BOC through its own branches in the U.S., along with plaintiffs' allegations that BOC performed a wire transfer to PIJ

---

[1] Indeed, the Court subsequently found that plaintiffs had properly stated a claim for relief under the ATA sufficient to satisfy Federal Rule of Civil Procedure 12(b)(6). Mem. Op. 44–67.

through one of its U.S. branches, sufficiently established BOC's minimum contacts with the United States and therefore warranted the exercise of jurisdiction. *Id*. at 32–33.

Moving to a discussion of venue, the Court first held that because BOC failed to raise any objection to venue in its moving papers, it had waived any such objection in this case. *Id*. at 38. However, in an abundance of caution, the Court also reached the merits of the venue question, holding that the doctrine of pendent venue, which provides that "where venue is proper for some, but not all, claims and where . . . the claims arise out of the same core of operative facts, plaintiffs may rely on the doctrine of 'pendent venue' to cure any venue defect," *Sisso v. Islamic Republic of Iran*, 448 F. Supp. 2d 76, 82 (D.D.C. 2006) (citing *Washington v. Gen. Elec. Corp.*, 686 F. Supp. 361, 362 (D.D.C. 1988)), was applicable here. The Court then briefly addressed BOC's argument in its reply concerning the ATA's service provision, concluding—after characterizing BOC's position as arguing "that because venue is improper, plaintiffs cannot establish personal jurisdiction"—that it "need not reach" this argument because it had already held "that this is a proper venue." Mem. Op. at 41 n.5.

Shortly after the release of the Court's opinion, BOC filed its Motion for Reconsideration or for Certification for Interlocutory Appeal of the Order Denying Motion to Dismiss, Nov. 5, 2010 [92] ("Br."), in which it maintains that the Court erred in asserting personal jurisdiction over defendant, and also disputes the Court's determination that this suit is properly venued.[2] *Id*. at 5–18. The primary thrust of defendant's motion focuses on an issue that—as defendant correctly points out, *id*. at 2—the Court did not squarely address in its opinion. That issue is whether plaintiffs must satisfy the specific venue provision of the ATA, as provided at 18 U.S.C. § 2334(a), in order to invoke the statute's nationwide service provision, or whether plaintiffs

---

[2] Though defendant challenges the Court's venue holding, the Court declines to revisit the dispute, as its holding below concerning personal jurisdiction is dispositive.

must simply establish that venue is proper on any grounds. *Id.* Plaintiffs, in opposition to BOC's motion, argue that there is no link between the ATA's venue and service provisions, and emphasize that the Court has already determined that defendant's objection to venue was waived. Opposition to Motion for Reconsideration or for Certification for Interlocutory Appeal 1–6, Nov. 24, 2010 [95] ("Opp.").

## III.    LEGAL DISCUSSION

### A.    Grounds for Reconsideration

Though "no express rule . . . is needed to justify a motion for reconsideration," Federal Rule of Civil Procedure 54(b) "by its terms allow[s] the trial court to modify its earlier order." *Dellums v. Powell*, 566 F.2d 231, 234 (D.C. Cir. 1977); *see also Cobell v. Norton*, 355 F. Supp. 2d 531, 539 (D.D.C. 2005) ("Rule 54(b) governs reconsideration of orders that do not constitute final judgments in a case."). While this rule provides a procedural mechanism for courts to reconsider their prior opinions, the actual language of Rule 54(b) sets forth little guidance as to when such review is appropriate.[3] To fill this gap, courts in this district have held that "relief upon reconsideration . . . pursuant to Rule 54(b) is available 'as justice requires.'" *Hoffman v. District of Columbia*, 681 F. Supp. 2d 86, 90 (D.D.C. 2010) (quoting *Childers v. Slate*, 197 F.R.D. 185, 190 (D.D.C. 2000)). "[A]sking 'what justice requires' amounts to determining, within the Court's discretion, whether reconsideration is necessary under the relevant circumstances." *Cobell*, 355 F. Supp. 2d at 539; *see also United States v. Second Chance Body Armor, Inc.*, 709 F. Supp. 2d 52, 55 (D.D.C. 2010) ("[A] court has wide discretion in deciding a motion for reconsideration and can revise its earlier decision if such relief is necessary under the circumstances.") (citing *Judicial Watch v. Dep't of Army*, 466 F. Supp. 2d 112, 123 (D.D.C.

---

[3] Because the Court grants BOC's motion for reconsideration, it does not consider BOC's alternative request for certification of an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

2006)). The relevant circumstances that may warrant reconsideration include "whether the court 'has patently misunderstood a party, has made a decision outside the adversarial issues presented to the court by the parties, has made an error not of reasoning, but of apprehension, or where a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the court.'" *Ficken v. Golden*, 696 F. Supp. 2d 21, 35 (D.D.C. 2010) (quoting *Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004); alterations in original); *see also Hoffman*, 681 F. Supp. 2d at 90 (same); *Capitol Justice, LLC v. Wachovia Corp.*, 605 F. Supp. 2d 187, 190 (D.D.C. 2009) (same). Here, at least two of these factors militate in favor of reconsidering the Court's opinion denying the initial motion to dismiss.

First, as described above, the Court misread defendant's primary argument concerning the proper interpretation of 18 U.S.C. 2334(a)—the ATA's venue and service provision. In its opinion on the motion to dismiss, the Court treated defendant's argument as one based on the lack of venue, explaining that BOC "carrie[d] its venue argument into the issue of personal jurisdiction." Mem. Op. at 41 n.5. Thus, because the Court found that this action is properly venued, it did not squarely address BOC's § 2334(a) argument. *See id.* ("Because the Court concludes that this is a proper venue under the doctrine of pendent venue, the Court need not reach [BOC'S] additional argument concerning jurisdiction."). BOC's argument, however, is not one of general venue, but raises questions of statutory construction—specifically, that the ATA's provision of nationwide service is limited by the plain text of the Act, which, according to defendant, ties invocation of that provision to assertion of venue under the terms specified by the statute. By reading BOC's position as one concerning venue generally, however, the Court did not address critical issues of interpretation, nor did it review relevant precedent of this Circuit

and other district courts interpreting similar statutes.[4]  From the explanation in the Memorandum

Opinion, therefore, it is clear that the Court patently misunderstood the thrust of BOC's

jurisdictional argument, rendering its opinion incomplete.  In such circumstances, justice requires

that the Court revisit its decision and give BOC's argument the full attention necessary to render

a complete decision.

Second, as a derivative result of this misunderstanding, the Court also did not consider

relevant opinions of the D.C. Circuit Court of Appeals on the issues presented.  "Errors of

apprehension may include a court's failure to consider 'controlling decisions or data . . . that

might reasonably be expected to alter the conclusion reached by the court.'"  *Singh v. George*

*Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (quoting *Shrader v. CSX Transp.,*

*Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); alteration in original); *see also Rogers v. Mabus*, 699 F.

Supp. 2d 73, 76 (D.D.C. 2010) (noting that courts look to whether they "made an error in failing

to consider controlling decisions or data" in considering motions to reconsider); *Alexander v.*

*FBI*, 691 F. Supp. 2d 182, 188 (D.D.C. 2010) (same).  Here, the Court failed entirely to grapple

with the implications of the D.C. Circuit's opinion in *GTE New Media Servs. Inc. v. Bellsouth*

*Corp.*, 199 F.3d 1343 (D.C. Cir. 2000), as well as the opinions of other courts in this district

applying that leading case.  While the *GTE New Media* decision involves the construction of a

different federal statute, it remains *binding precedent*, and as such it is instructive to the Court in

its resolution of the key issue of statutory interpretation here; and, as seen below, *see infra*

Section III.B.1, the *GTE New Media* opinion is ultimately a significant factor in the Court's legal

conclusions regarding the proper construction of the ATA.

---

[4] Whether it might be said that BOC did not put its argument forward in full-force, there can be no doubt that it did, in fact, make the argument.  *See* MTD Reply at 5 (arguing that plaintiffs "cannot satisfy the condition precedent to nationwide service process given that this lawsuit has not been commenced in a district 'where any plaintiff resides or where any defendant [sued under the ATA] resides or is served, or has an agent'") (quoting 18 U.S.C. § 2334(a); alteration in original).

In conclusion, though BOC's argument concerning the interaction of the venue and service provisions in the ATA was, at some level, discussed in the parties' briefings on the motion to dismiss, the issue was not framed in the precise terms now before the Court, and defendant's argument lacked the clarity and force with which it now articulates its concerns.  As a result, the Court failed to analyze relevant legal precedent, and did not approach the problem as one of statutory interpretation.  With the benefit of this additional briefing, the Court is prepared to rule on BOC's argument which, in its clearest terms, is as follows:  By the plain language and structure of the ATA, plaintiffs here cannot invoke the nationwide service provision *unless* they have satisfied the requisite venue provision, which they cannot satisfy.  The Court finds that this argument warrants reconsideration, and, for the reasons set forth below, holds that it does in fact lack personal jurisdiction over BOC in this case.

**B.      Merits of Defendant's Personal Jurisdiction Argument**

**1.      Nationwide Service of Process under the ATA**

In its Memorandum Opinion, the Court held that BOC was subject to jurisdiction in this district because it had sufficient contact with the entire United States.  Mem Op. 29–36.  The Court evaluated BOC's contacts with the United States as a whole—rather than the standard practice of only looking to the defendant's contacts with D.C. specifically—after observing that plaintiffs had served BOC pursuant to the ATA's provision of nationwide service of process.  *Id.* at 29–31.  That specific provision reads:

> Any civil action under section 2333 of this title against any person may be instituted in the district court of the United States for any district where any plaintiff resides or where any defendant resides or is served, or has an agent.  Process in such a civil action may be served in any district where the defendant resides, is found, or has an agent.

18 U.S.C. § 2334(a). In its motion for reconsideration, BOC argues that the ATA's grant of nationwide service—the second clause of this provision—is inextricably tied to the first clause, which defines the universe of locations in which a plaintiff may properly lay venue in a civil action using the ATA's specific provision.[5]

In interpreting the ATA, the Court, as always, begins by looking to the language of that statute. *CBS, Inc. v. FCC*, 453 U.S. 367, 377 (1981). And in reviewing the particular language, the Court must ascribe to the words their plain and ordinary meaning, absent substantial evidence that Congress intended some other definition. *See Save Our Cumberland Mountains, Inc. v. Clark*, 725 F.2d 1422, 1427 (D.C. Cir. 1984) ("We ascribe to words their plain and ordinary meaning absent convincing reasons to the contrary.") (citing *Burns v. Alcala*, 420 U.S. 575, 580–81 (1975)). Here, a plain reading of the relevant provisions of the ATA supports defendant's position. Specifically, the Act's provision of nationwide service—which is in the second clause of the section, and follows the description of venue under the statute—begins by stating that such service is permitted "in such a civil action." 18 U.S.C. § 2334(a). The meaning of this phrase, "in such a civil action," is an unmistakable reference back to the preceding clause, which sets forth those civil actions which may be venued under the provisions of the ATA. Indeed, the word 'such' is generally meant to refer to something "of the character, quality or extent previously indicated." Merriam-Webster's Collegiate Dictionary 1178 (9th ed. 1990). A common understanding of this phrase, then, is one that directs the reader to refer back to the preceding clause to discover the character, quality or extent of those civil actions to which the service provision applies. And that description—provided in the first clause of § 2334(a)—sets

---

[5] Plaintiffs are correct in refraining from suggesting that BOC waived its argument concerning the proper construction of § 2334(a). BOC objected on personal jurisdiction grounds in its initial motion to dismiss, MTD Br. at 12–18, and was thus entitled to respond when plaintiffs' opposition to that motion made clear that plaintiffs intended to rely exclusively upon the ATA in asserting jurisdiction over BOC. More importantly, the Court permitted plaintiffs to respond to BOC's § 2334(a) argument raised in its reply—which they did—thus "effectively negat[ing] the policy reasons for not allowing consideration" of that argument. Mem. Op. at 39.

forth specific civil actions which meet particular conditions for venue under the statute. Thus, properly understood, invocation of the ATA's provision of nationwide service of process rests on the satisfaction of its venue clause.

This interpretation is further supported by the particular structure of the ATA. In drafting the Act, Congress chose to provide for nationwide service of process *only* in the provision that sets forth appropriate venue under the ATA. The choice to include its provision of nationwide service within this section—particularly where that section is titled "General Venue"—cannot be ignored. Had Congress intended to provide for nationwide service of process in *any* ATA action, rather than only in those venued pursuant to § 2334(a), it could easily have written the statute to provide for broader service. The fact that these two clauses are part of a single provision, however, suggests that it did not intend this result.

The Court also finds support for its understanding of § 2334(a) in interpretations of similarly-worded statutes by the courts of this district. For example, in its preeminent opinion on the interaction of venue and service provisions in federal statutes, *GTE New Media*, the D.C. Circuit Court of Appeals addressed the proper construction of the grant of nationwide service in Section 12 of the Clayton Act, 15 U.S.C. § 22. That provision states:

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

*Id.* The dispute in *GTE New Media* was indistinguishable from the dispute in this case: the plaintiff had utilized § 22's nationwide service of process provision to obtain jurisdiction over the defendants, who then objected to the invocation of that statutory grant of service on the ground that the plaintiff had not satisfied the preceding venue provision. 199 F.3d at 1350. The

D.C. Circuit agreed. Interpreting § 22, the Circuit Court held that "[t]he language of the statute in plain, and its meaning seems clear:" the first clause relates to "a supplemental basis for venue," the second clause relates to "nationwide service of process," and "invocation of the nationwide service clause rests on satisfying the venue provision." *Id*. In doing so, the Circuit Court rejected the plaintiff's "tortured interpretation," finding it "quite unreasonable to presume that Congress would intentionally craft a two-pronged provision with a superfluous first clause, ostensibly link the two provisions with the 'in such cases' language, but nonetheless fail to indicate clearly anywhere that it intended the first clause to be disposable." *Id*. at 1345 & 1351. This rationale applies with equal force here.

Subsequent to the holding in *GTE New Media*, another court in this district applied the Circuit Court's reasoning to interpret a jurisdictional provision of the Securities Exchange Act of 1934. *Poling v. Farrah*, 131 F. Supp. 2d 191, 192 (D.D.C. 2001). That statute, like the Clayton Act, includes a two-clause provision, the first of which provides that a suit under the Act "'may be brought in . . . the district wherein the defendant is found or is an inhabitant or transacts business,'" and the second of which permits "'process in such cases [to] be served . . . wherever the defendant may be found.'" *Id*. (quoting 15 U.S.C. § 78aa). Relying on the Circuit Court's guidance in *GTE New Media*, the *Poling* Court held that "the service of process provision . . . necessarily is limited by the requirements of the venue provision." *Id*. at 193.[6] Thus, as in *Poling*, the Court here determines that the provisions of the Clayton Act and the ATA "are sufficiently similar that . . . it [is] prudent to follow the Circuit's analysis." 131 F. Supp. 2d at

_____

[6] Plaintiff incorrectly suggests that this statement was dicta. Opp. at 3 n.1. It is true that in *Poling*, unlike in *GTE New Media*, the district court ultimately determined that it had jurisdiction over the defendant. 131 F. Supp. 2d at 193–94. However, that factual finding does not diminish the *Poling* Court's central legal holding—that the venue and service provisions of § 78aa are linked. Indeed, precisely because of this determination, the district court held that the nationwide service "provision of Section 27 by itself cannot give the Court personal jurisdiction," because the plaintiff must satisfy the venue provision before he can rely upon the Act's grant of nationwide service. *Id*. at 193. Thus, the *Poling* Court proceeded to analyze whether, as a factual matter, the Act's venue provision was satisfied, observing that it had jurisdiction *only because* the terms of the venue provision were met. *Id*.

193; *see also Faison v. District of Columbia*, 664 F. Supp. 2d 59, 65–66 (D.D.C. 2009) (holding that where provision of one statute mirrors provisions of others they are generally "interpreted the same way by courts").[7]

Plaintiffs initially respond by arguing that any objection by defendant to venue in this action has been waived. Opp. at 5–6. However, this argument is misguided for the same reasons that plagued the Court's original opinion on the motion to dismiss—it confuses the broad issue of venue with the narrow issue of the proper construction of the relevant ATA provision. The issue before the Court is not whether this action is properly venued; the issue is whether plaintiffs may invoke the ATA's grant of nationwide service without first satisfying the specific venue conditions set forth in the ATA. The fact that venue may otherwise properly be based on some statute or doctrine is therefore irrelevant. Indeed, the *GTE New Media* Court rejected this same argument. In that case, the plaintiff was able to satisfy the venue requirements 28 U.S.C. § 1391—the general venue statute. *GTE New Media*, 199 F.3d 1350–51. But, as the Circuit Court held, the issue was not whether the action was properly venued, but rather whether the plain language of the Clayton Act required the plaintiff to satisfy the *particular* requisite set forth in that statute before invoking the Act's provision of nationwide service. *See id.* at 1351 ("'Congress has seen fit to enlarge the limits of the otherwise restricted territorial areas of process. . . . [T]he extraterritorial service privilege is given only when the other requirements are satisfied.'") (quoting *Goldlawr, Inc. v. Heiman*, 288 F.2d 579, 587 (2d Cir. 1961)). Thus, plaintiffs' ability here to apply the doctrine of pendent venue is irrelevant to the question of whether it can otherwise satisfy the ATA's venue provision.

---

[7] Though analyzing the phrase "any such district," the *Poling* Court's reasoning concerning the meaning of the word "such" in two-clause statutes is also persuasive in interpreting the ATA. Specifically, the *Poling* Court held that the word "such" "refers to the preceding" description. 131 F. Supp. 2d at 193. Thus, just as the phrase "any such district" in § 78aa refers back to the description of districts "wherein any act or transaction constituting the violation occurred," *id.*, the phrase "in such cases" in the ATA refers back to those cases that are "instituted in . . . any district where any plaintiff resides or where any defendant resides or is served, or has an agent." 18 U.S.C. § 2334(a).

Plaintiffs also argue that the ATA's use of two sentences for its venue and service provisions, rather than including both clauses in one sentence separated by a semicolon (as in the Clayton Act), is significant. In support of this position, plaintiffs submit the Second Circuit's opinion in *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408 (2d Cir. 2005), by way of supplemental briefing. Notice of Authority, Dec. 20, 2010 [97].[8] *Daniel* is of no help to plaintiffs. While they assert that the *Daniel* Court "explicitly held that if Congress had intended the venue and service provisions of the Clayton Act to operate independently, it would have codified them in different sentences separated by a period, rather than a single sentence containing two clauses separated by a semi-colon," *id*. at 2, plaintiffs substantially over-read the import of the relevant passage in the *Daniel* opinion. At most, the Second Circuit observed that it would be "curious" for Congress to include both provisions in a single sentence if it intended that they be read independently. 428 F.3d at 425 n.15. And the grammatical text referenced by the *Daniel* Court merely suggests that the use of a semicolon "is a better way" to identify a relationship between two clauses. *Id*. Nowhere does the Second Circuit hold, as plaintiffs suggest, that the use of two sentences *requires*, or even implies, that the Court *must* read those two statements separately. And more importantly, plaintiffs ignore the fact that the *Daniel* Court's actual holding did not rely on this point at all; instead, the Second Circuit's primary rationale was that the language "in such cases" in the service clause constitutes a clear reference to the preceding venue section.[9] *See id*. at 423–24 (holding that "in such cases" reference refers

---

[8] The Court pauses to express concern that a notice of supplemental authority is not an appropriate vehicle to submit a five-year old leading opinion on a key issue in dispute. However, because *Daniel* does not sway the Court's final opinion, these concerns are not addressed here.

[9] For these same reasons, the Court rejects plaintiffs' suggestion that the phrase "such a civil action" in the service provision of the ATA refers to the language "[a]ny civil action under section 2333" in the venue provision. Opp. at 4. As the *Daniel* Court explained, to understand the reference in the service clause of the Clayton Act—or here, in the ATA—one must read the entire venue clause. Thus, here the ATA's reference is not to any civil action under section 2333, or even to any civil action under section 2333 against any person; rather the reference is specifically to any civil action under section 2333 against any person *instituted in the district court of the United*

not to "antitrust cases, or even antitrust cases against corporations[, but] antitrust cases against corporations brought in the particular venues approved by Section 12"). This reasoning is consistent with the D.C. Circuit in *GTE New Media* and equally applicable to the ATA here.

Finally, plaintiffs suggest that the ATA provision is distinct from the Clayton Act or the Securities Exchange Act in a manner requiring a different interpretation. Plaintiffs focus on the inclusion of any district where a "plaintiff resides" as a proper venue under the ATA provision. Opp. at 2–4. Based on this language, plaintiffs conclude that "Congress was utterly unconcerned with whether the defendant has jurisdictional contacts with the forum in which the action is brought," and emphasize that, had they brought this suit in the district in Florida where they reside, they could have asserted jurisdiction over BOC based on its own reading of the ATA. *Id.* at 3. This latter statement is true. But again, it is true *only* because bringing the action in Florida would satisfy the ATA's venue provision. What plaintiffs fail to explain is why the inclusion of a plaintiff's domicile as a proper venue in the ATA should cause this Court to disregard the venue provision entirely when considering whether a plaintiff may invoke the Act's grant of nationwide service. Plaintiff's general assertion simply cannot override the plain text of the statute, which provides that only plaintiffs in "such a civil action" that is properly venued under § 2334(a) may serve process in that action anywhere in the United States. 18 U.S.C. § 2334(a). The clear meaning of the words employed in the ATA leaves no room for plaintiff's expansive interpretation. *See Burnett v. Al Baraka Inv. & Dev. Corp.*, 274 F. Supp. 2d 86, 93 (D.D.C. 2003) ("If the language has a 'plain and unambiguous meaning,' the court's inquiry ends.").

And even if this Court were inclined to explore beyond the plain meaning of the language in the statute—which it is not—plaintiffs offer no explanation as to why the inclusion of

---

*States for any district where any plaintiff resides or where any defendant resides or is served, or has an agent.* 18 U.S.C. 2334(a). This is not such a case.

plaintiffs' domicile among proper venues in the ATA should cause the Court to ignore the clear link between the provision of venue and the grant of nationwide service. Plaintiffs insist that "the venue provisions of § 2334(a) have nothing to do with personal jurisdiction at all, and are therefore unrelated to the nationwide service of process provisions." Opp. at 3. But while the venue clause of § 2334(a) do not discuss jurisdiction, it is plainly linked to the service of process clause by virtue of being part of the same statutory provision.[10] And moreover, if it was Congress' intention to permit nationwide service in any case brought under the ATA, Congress could easily have made that intention plain by, *inter alia*, providing for nationwide service of process in a separate provision distinct from venue or by excluding the linking language "such a civil action" from the statutory grant of nationwide service. Congress did not do so, however, and thus this Court is left with the same concern for plaintiffs' position here as the *GTE New Media* Court had for the plaintiff's "tortured interpretation" in that case: Why would Congress intentionally craft a two-part section with a superfluous first provision, ostensibly link the two provisions with the "in such a civil action" language, but nonetheless fail to indicate clearly anywhere that it intended the first provision to be disposable? 199 F.3d at 1351. Plaintiffs offer no answer to this query, and the Court does not see any plausible explanation other than that Congress *did not* intend for the courts to disaggregate the two clauses of § 2334(a). In sum, this Court will not eschew the plain language of the ATA, the Act's structure, and the interpretations of similarly-worded statutes by the courts of this district—all of which militate in favor of holding that the venue and service provisions of the ATA are linked—in favor of negative

---

[10] For this reason, plaintiffs' reliance on *Reese Bros.* is misplaced. The district court in that case interpreted the service provision in the Federal Debt Collection Procedures Act, which provides for nationwide service without limit. *See* 28 U.S.C. 3004(b)(1)(A) (stating that "*any* writ, order, judgment, or other process . . . filed under this chapter may be served in any State") (emphasis added). Indeed, the *Reese Bros.* Court specifically noted that nationwide service provisions conferred nationwide jurisdiction "absent an explicit limitation" on such provisions, such as those found in the Clayton Act and the Securities Exchange Act of 1934. 477 F. Supp. 2d at 39. And in its holding, the district court emphasized that "unlike those [other] statutes, the [Act]'s nationwide service of process provision is not contingent" upon any other provision. *Id.*

inferences and unfounded assertions of congressional intent. Thus plaintiffs, in order to invoke the ATA's grant of nationwide service, must first establish that venue is proper under the Act.

### 2. Plaintiff Cannot Satisfy the ATA's Venue Provision

The evidence in this case has already made clear that plaintiffs cannot satisfy the venue provision of the ATA. The plain terms of that section permit venue to lie where (1) "any plaintiff resides," (2) "any defendant resides[, (3)] or is served,[(4)] or has an agent." Here, plaintiffs are all domiciled in Florida, FAC ¶ 5, and defendant BOC "is a corporation organized under the laws of the People's Republic of China and headquartered in the PRC." *Id*. at ¶ 24. Moreover, while plaintiffs do not allege whether BOC has any agents in the United States, they do allege that it has branch offices in California and New York, but not the District of Columbia. *Id*. Finally, though this Court "has no reason to doubt that BOC was appropriately served under § 2334," Mem. Op. at 29, there is simply no evidence that plaintiffs served defendant in D.C., *see id*. at 39 (finding that BOC "was not served . . . in this district"), and thus venue cannot lie on the basis of that plank of the venue provision.

### 3. Personal Jurisdiction over BOC Absent Nationwide Service

In light of the Court's determination that plaintiffs cannot invoke the ATA's nationwide service of process provision here, the Court must revisit its holding concerning personal jurisdiction to determine whether plaintiffs have alleged a substantial connection between BOC and the District of Columbia sufficient to warrant the exercise of jurisdiction. Under the Due Process Clause, personal jurisdiction may be exercised "over nonresidents if the . . . defendant has 'certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Donahue v. Far E. Transp. Corp.*, 652 F.2d 1032, 1036 (D.C. Cir. 1981) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316

(1945)).  Personal jurisdiction falls into two broad types.  General jurisdiction involves instances where a defendant has the sort of "continuous and systemic general business contacts" with the forum that justify subjecting it to suit in that jurisdiction for any purpose.  *Urban Inst. v. FINCON Servs.*, 681 F. Supp. 2d 41, 45 (D.D.C. 2010) (citing *Helicopteros Nacionales de Colum., S.A. v. Hall*, 466 U.S. 408, 416 (1984)).  Specific jurisdiction, on the other hand, is limited to the commission of some single act or occasional acts in a forum that are sufficient to render a defendant liable to suits that arise from those acts.  *Donahue*, 652 F.2d at 1036.  As always, "plaintiffs have the burden of establishing the Court's personal jurisdiction over" defendant BOC.  *FC Inv. Grp. LC v. IFX Mkts., Ltd.*, 529 F.3d 1087, 1091 (D.C. Cir. 2008).

In its opinion on personal jurisdiction the Court found that BOC had sufficient minimum contacts with the United States generally—rather than D.C. specifically—and, on the basis of these findings, held that plaintiffs satisfied the requirements for personal jurisdiction under the Due Process Clause in this case.  Mem. Op. at 29–36.  The Court relied upon (1) the allegations that BOC does extensive business in the United States through its own branches, *id*. at 32, (2) the allegation that BOC performed a wire transfer through one of its branches for the PIJ, *id*. at 33, (3) and the reasonable presumption that BOC should have been aware that any party subject to a civil claim under 18 U.S.C. § 2333 may be hauled into various district courts under 18 U.S.C. § 2334(a).  *Id*. at 34.  Each of these factors supported the Court's determination that BOC has sufficient minimum contacts with the United States to support the exercise of both general and specific jurisdiction in this case.  *Id*. at 36.

None of these factors, however, are capable of establishing any relationship between defendant BOC and this forum.  With regard to plaintiffs' allegation that BOC "does extensive business throughout the United States," FAC ¶ 24, plaintiffs have never contended that any of

this business is conducted in the District of Columbia, nor have they provided any evidence that BOC interacts with D.C. at all. As to the alleged wire transfers, plaintiffs themselves concede in the FAC that defendant's branches are located in California and New York, and not in this forum. *Id*. And plaintiffs never allege that the wire transfers otherwise moved through, or were aimed at, the District. Finally, while BOC may have been aware of the broad service provision in the ATA, Mem. Op. at 34, the briefing in this case makes clear that BOC reasonably understood that provision to apply *only* if a plaintiff could establish venue under the Act. Because BOC is correct that this forum does not fall within the scope of the ATA's venue provision, *see supra* Section III.B.2, it could not have expected to be subject to suit here. Thus, since BOC lacks any substantive contact with the District of Columbia—a fact conceded by plaintiffs, *see* MTD Opp. at 32 ("BOC lacks minimum contacts in the District of Columbia")— the Court may not exercise personal jurisdiction over it in this case.[11]

### C.    Transfer

Having held that it may not assert personal jurisdiction over BOC in this case, the Court must now determine the proper disposition of plaintiffs' claims. In their briefing, plaintiffs renew their argument that, in the event the Court finds that it lacks personal jurisdiction over defendants, it should transfer the claims against BOC to an appropriate forum. Opp. at 6 n.3. In their original opposition to defendant's motion to dismiss, plaintiffs took the position that were the Court to determine that it lacked jurisdiction over BOC, "the proper course of action would not be to dismiss the [claims] but rather to transfer the case against BOC to the Southern District

---

[11] The Court's basis for asserting jurisdiction over the non-ATA claims against BOC in this action was the doctrine of pendent personal jurisdiction. Mem. Op. at 36–37. Because the Court finds that it lacks personal jurisdiction over plaintiffs' ATA claims against BOC, it can no longer employ the doctrine of pendent personal jurisdiction to assert jurisdiction over plaintiffs' Israeli-law claims. *See Sisso*, 448 F. Supp. 2d at 90–91 (stating that pendent jurisdiction is asserted "with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit *over which the Court does have personal jurisdiction*.") (quotations omitted; emphasis added).

of New York pursuant to § 1406(a)."  MTD Opp. at 32.  For the reasons set forth below, the

Court agrees, and will sever and transfer the claims against BOC.

The federal venue statute permits the Court, in the interest of justice, to transfer the action

to any other district where it could have been brought.  28 U.S.C. § 1406(a).  The Court retains

the power to transfer an action even if it lacks jurisdiction over the defendants.  *See Goldlawr,*

*Inc. v. Heiman*, 369 U.S. 463, 466 (1962) ("The language of § 1406(a) is amply broad enough to

authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to

venue, whether the court in which it was filed had personal jurisdiction over the defendants or

not."); *Cameron v. Thornburgh*, 983 F.2d 253, 257 (D.C. Cir. 1993) ("[W]e may transfer the

case [pursuant to § 1406(a)] even though it is likely that we do not have personal jurisdiction

over [defendants].").  Transfers under § 1406(a) are appropriate "when procedural obstacles

'impede an expeditious and orderly adjudication on the merits."  *Sinclair v. Kleindienst*, 711 F.2d

291, 293–94 (D.C. Cir. 1983) (quoting *Goldlawr, Inc.*, 369 U.S. at 466–67).  These obstacles

include "lack of personal jurisdiction, improper venue, and statute of limitation bars."  *Id*. at 294.

Here, several reasons militate in favor of transfer to the United States District Court for

the Southern District of New York.  First, because BOC operates a branch in New York, it both

"resides" and "has an agent" in the forum, and thus any suit against it may be properly venued

under the ATA.  *See Crenshaw v. Antokol*, 287 F. Supp. 2d 37, 42 (D.D.C. 2003) ("To transfer

an action, the court must ensure as a preliminary matter that venue is proper . . . in the transferee

forum.").  Second, under defendant's own interpretation of the ATA's service provision—which

the Court adopts—because venue would lie in the Southern District of New York, plaintiffs

could invoke the Act's provision of nationwide service of process to obtain personal jurisdiction

over BOC.  Moreover, even if plaintiffs were somehow unable to utilize the nationwide service

provision in the ATA, BOC is subject to general jurisdiction in New York by virtue of maintaining a branch office in the State—a fact BOC has previously conceded. *See* MTD Br. at 15 ("BOC is subject to the general jurisdiction of the courts of New York."). Thus, transfer is warranted here because an alternative forum exists in which the courts will have jurisdiction over defendant BOC. *See Simpson v. Fed. Bureau of Prisons*, 496 F. Supp. 2d 187, 194 (D.D.C. 2007) (transferring case because district court lacked personal jurisdiction over defendants and "the District Court for the Middle District of Pennsylvania will have personal jurisdiction over the two defendants"). Finally, plaintiffs express concern that, were this action dismissed, applicable statutes of limitation would bar them from raising several of their claims against BOC in a new action. MTD Opp. at 33. Plaintiffs' claims under the ATA, for example, are subject to a four-year limitations period. *See* 18 U.S.C. § 2335(a) ("[A] suit for recovery of damages under section 2333 . . . shall not be maintained unless commenced within 4 years after the date the cause of action accrued."). "Transfer is particularly appropriate where, as here, without a transfer the cause of action would be barred by the running of the applicable statute of limitations." *Sinclair*, 711 F.2d at 294 (citing *Burnett v. N.Y. Central R.R. Co.*, 380 U.S. 424, 430 (1965)). For all these reasons, the Court finds that transfer of plaintiffs' claims against BOC to the Southern District of New York—where venue and jurisdiction lie, where defendant BOC maintains a branch office, and where both parties agree that this case may proceed—is in the interests of justice and will ensure the most efficient resolution of this dispute.

The only remaining issue is whether the Court should transfer this entire suit, or only the claims against BOC, to the Southern District of New York. In their briefing, plaintiffs argue that "the Court is not required to transfer the entire case," and suggest that "the proper course is to sever the defendant whose case is being transferred but to proceed with the case against the

defendants over which the Court has jurisdiction—in this case the Iranian and Syrian defendants." MTD Opp. at 34. The federal rules permit the Court to sever claims within the same action at any stage of the proceedings. Fed. R. Civ. P. 21. If the Court were to sever the claims against BOC from those against the foreign-state defendants, those claims would then act as a parallel suit which the Court could transfer while retaining the claims against Iran and Syria. *See Disparte v. Corp. Exec. Bd.*, 223 F.R.D. 7, 12 (D.D.C. 2004) ("'Once a claim has be severed . . . it proceeds as a discrete unit with its own final judgment.'") (quoting 7 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1689 (2001)). In assessing a request to sever, the Court will consider whether any order under Rule 21 would prejudice any party or would result in undue delay. *M.K. v. Tenet*, 216 F.R.D. 133, 138 (D.D.C. 2002) (citing *Mosley v. G.M. Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974)).

As a general matter, courts are wary of severing claims related to particular sets of facts because the resulting multiplicity of litigation concerning the same event poses potential for confusion and undermines the goal of orderly and efficient resolution of disputes. Here this concern is minimal. In its motion to reconsider, BOC argues extensively that the claims against it do not involve a common nucleus of operative facts shared with the claims against Syria and Iran, pointing out both that "different proofs would be required to establish the foreign-state . . . claim and claims against BOC" and that "the claims will require different evidence of the different types of alleged support," as the claims against the foreign states do not involve any action by BOC, while the "specific alleged wire transfers [involving BOC] have no alleged involvement by Syria and Iran." Br. at 13–16. In short, proceeding in two separate actions rather than one would result in, at most, a negligible loss in efficiency, and the Court finds no basis to conclude that severance would unduly prejudice BOC, as it has previously argued that

the claims against it are unrelated to those against the foreign-state defendants. The Court will therefore sever plaintiffs' claims against BOC and transfer those claims to the Southern District of New York, while retaining plaintiffs' claims against the foreign-state defendants. *See Sharp Elecs. Corp. v. Hayman Cash Register Co.*, 655 F.2d 1228, 1230 (D.C. Cir. 1981) (holding, where plaintiffs could proceed against some, but not all, defendants in local forum, that "the appropriate course of action would appear to be severance").

## IV. CONCLUSION

The Court is aware that plaintiffs have now been engaged in litigation over the tragic events of April 17, 2006 for several years, and that in this action motions to dismiss have now been briefed and re-briefed, and an Answer has been filed by BOC. However, plaintiffs' difficulties in prosecuting this suit cannot trump clear statements by Congress limiting the extent to which parties may serve process on, and courts may assert jurisdiction over, foreign entities. Under the plain language of the ATA, plaintiffs could have brought this action in Florida, or in California, or in New York; and by choosing instead to pursue their claims in this forum, plaintiffs have only further delayed the resolution of this dispute. However, the Court has now determined that plaintiffs have adequately alleged several causes of action against BOC, Mem. Op. at 41–113, and therefore the Court does not wish to further exacerbate the already-extensive delays. The Court will thus sever and transfer the claims against BOC to the Southern District of New York so that these proceedings may reach a prompt conclusion.

A separate Order consistent with these findings shall issue this date.

Signed by Royce C. Lamberth, Chief Judge, on January 28, 2011.