**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SHERYL WULTZ, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | 08-cv-1460 (RCL) |
| v. ) | |
| ) | |
| ISLAMIC REPUBLIC OF IRAN, *et al.* ) | |
| ) | |
| Defendants. ) | |
| ) | |

**PLAINTIFFS' MOTION FOR AN EXPEDITED ORDER PURSUANT
TO 28 U.S.C. § 1610(c) TO PERMIT ATTACHMENT AND EXECUTION ON THE
DEFAULT JUDGMENT AGAINST THE IRANIAN AND THE SYRIAN DEFENDANTS**

Pursuant to 28 U.S.C. § 1610(c), Plaintiffs Sheryl Wultz, Estate of Daniel Wultz, Yekutiel "Tuly" Wultz, and Amanda Wultz (collectively "Wultzes") ask the Court to enter an Order authorizing them to enforce the default judgment entered against the Islamic Republic of Iran ("Iran") and the Iranian Ministry of Information and Security ("MOIS") (collectively, "Iranian Defendants") and against the Syrian Arab Republic ("Syria"), Syrian Ministry of Defense, Syrian Military Intelligence, and Syrian Air Force Intelligence Directorate. (collectively, "Syrian Defendants").

Because time is of the essence, the Wultzes ask the Court to consider, and rule upon, this Motion on an expedited basis. Currently, a fund of money belonging to the Iranian Defendants is subject to attachment and execution in the Southern District of New York in *Peterson v. Islamic Republic of Iran*, Case No. 1:10-cv-04518-KBF. ("*Enforcement Litigation*"). Upon entry of an Order permitting them to enforce their default judgments, the Wultzes will then be authorized to intervene in that proceeding and pursue this opportunity to recover the damages awarded in the

Judgment and Order entered by this Court on May 14, 2012 (D.E. 133) and the Amended Judgment entered on June 4, 2012. (D.E. 137). The Wultzes seek to join the *Enforcement Litigation* as soon as permitted by this Court in order to timely assert and protect their interest in the fund of Iranian assets under the jurisdiction of the United States District Court for the Southern District of New York.

I.     **THE REQUIREMENTS IMPOSED BY 28 U.S.C. § 1610(c) HAVE BEEN SATISFIED. THE WULTZES ARE THEREFORE ENTITLED TO ENFORCE THE DEFAULT JUDGMENT AGAINST BOTH THE IRANIAN DEFENDANTS AND THE SYRIAN DEFENDANTS.**

On December 17, 2009, this Court entered default against the Iranian Defendants after they failed to respond to service of the Complaint. (D.E. 66). On February 10, 2011, the Court entered default against the Syrian Defendants, who defaulted after the Court denied their motion to dismiss. (D.E. 105). Following two days of evidentiary hearings, the Court issued a Memorandum and Opinion on May 14, 2012, finding that the Iranian and Syrian Defendants were liable under 28 U.S.C. § 1605A(c), the state-sponsored terrorism exception of the Foreign Sovereign Immunities Act ("FSIA"), for a total of $332,068,634 in compensatory and punitive damages. (D.E. 134). On the same date, the Court entered its Order and Judgment against the Iranian and Syrian Defendants. (D.E. 133). The Court entered an Amended Judgment on June 4, 2012. (D.E. 137). (The Memorandum and Opinion, Order and Judgment, and Amended Judgment are referred to collectively as the "Default Judgment").

Although the Default Judgment is final against both the Iranian and Syrian Defendants, the FSIA precludes the Wultzes from enforcing it until the Court enters an Order permitting them to proceed. More specifically, Section 1610(c) of Title 28, which governs the enforcement of judgments against foreign states, their agencies, and their instrumentalities, provides:

> No attachment or execution referred to in subsections (a) and (b) of this section shall be permitted until the court has ordered such attachment and execution after having determined that a reasonable period of time has elapsed following the entry of judgment and the giving of any notice required under section 1608(e) of this chapter.

Section 1610(c), therefore, authorizes the Court to enter an order allowing the Wultzes to enforce their Default Judgment after it finds that (1) the Defendants have received notice of the judgment entered against them in conformity with the service procedures contained in 28 U.S.C. § 1608(e) and (2) each Defendant has had an adequate opportunity to respond. *Murphy v. Islamic Republic of Iran*, 778 F. Supp. 2d 70, 72-73 (D. D.C. 2011); *Agudas Chasidei Chabad of United States v. Russian Federation*, 798 F. Supp. 2d 260, 266-67 (D. D.C. 2011).

As demonstrated below, the record in this case shows that requirements imposed by 28 U.S.C. § 1610(c) have been satisfied. The Default Judgment has been served on all of the Defendants in the manner required by 28 U.S.C. § 1608(e) and legally sufficient time has now passed since the Court entered the Default Judgment and since the Wultzes transmitted copies of the Default Judgment to the Defendants. Because each Defendant has received both notice and an adequate opportunity to respond, Section 1610(c) authorizes the Court to enter an Order allowing the Wultzes to enforce the Default Judgment.

A. **All Defendants Have Been Served With The Default Judgment In Accordance With 28 U.S.C. 1608(e).**

Section 1608(e) provides that a copy of a default judgment "shall be sent to the foreign state or political subdivision in the manner prescribed for service in this section [28 U.S.C. § 1608]." Section 1608(a) and (b) lay out the procedures for serving foreign states and their agencies and instrumentalities.

Section 1608(a) proscribes four successive methods of serving foreign states under the FSIA. Plaintiffs must "attempt service by the first method (or determine that it is unavailable)

3

before proceeding to the second method, and so on." *Ben–Rafael v. Islamic Republic of Iran*, 540 F. Supp. 2d 39, 52 (D. D.C. 2008). These methods are service (1) "in accordance with any special arrangement ... between the plaintiff and the foreign state"; (2) "by delivery ... in accordance with an applicable international convention"; (3) "by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt"; and (4) "by sending two copies" to the U.S. Department of State, which "shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted." 28 U.S.C. § 1608(a)(1)-(4).

Similarly, Section 1608(b) also proscribes successive methods of service on agencies and instrumentalities of foreign states. These methods are service (1) "in accordance with any special arrangement . . . between the plaintiff and the agency or instrumentality"; (2) by delivery ... either to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process in the United States; or in accordance with an applicable international convention"; and (3) if the first two methods of service are unavailable, service may alternatively be accomplished (a) "as directed by an authority of the foreign state or political subdivision in response to a letter rogatory or request," (b) "by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the agency or instrumentality," or (c) "as directed by order of the court consistent with the law of the place where service is to be made." 28 U.S.C. § 1608(b)(1)(3).

As set forth more fully below, the Wultzes properly served the foreign states of Iran and Syria pursuant to 28 U.S.C. § 1608(a) and properly served their respective agency and instrumentality Defendants pursuant to 28 U.S.C. § 1608(b).

4

### 1. The Judgment Was Served On Iran In Conformity With 28 U.S.C. § 1608(a) And On The MOIS In Conformity With 28 U.S.C. 1608(b).

The Judgment has been properly served on Iran in conformity with 28 U.S.C. § 1608(a)(4) and the MOIS in conformity with 28 U.S.C. § 1608(b)(3).

<u>Service by Special Arrangement</u>. Service under Sections 1608(a)(1) and (b)(1) was not available. There are no special arrangement between the Wultzes and the Iranian Defendants for the service of judicial papers.

<u>Service by International Convention</u>. Service under Sections 1608(a)(2) and (b)(2) was not available. The Iran does not accept service of judicial documents under the terms of any international convention. *Valore v. Islamic Republic of Iran*, 700 F.Supp.2d 52, 70 (D. D.C. 2010). In addition, the Wultzes know of no agents in the United States authorized by the MOIS to receive service of process.

<u>Service by Mail</u>. In Minute Orders dated August 7, 2012 and August 28, 2012, the Court instructed the Wultzes to attempt to serve the Default Judgment on both the Iranian and Syrian Defendants by mail pursuant to 28 U.S.C. 1608(a)(3). The Court further instructed the Wultzes that, if they were not able to successfully serve the Default Judgment by mail, they were to proceed to serve the Defendants by diplomatic channels pursuant to 28 U.S.C. § 1608(a)(4).

In conformity with the August 7, 2012 Minute Order, the Wultzes timely asked the Clerk of the Court to dispatch by mail two copies of the Default Judgment and other required papers, together with relevant translations thereof, (collectively "Judgment Papers") addressed to each of the Iranian Defendants at the following address:

> The Islamic Republic of Iran, Ministry of Foreign Affairs
> Ali Akbar Salehi, Foreign Minister
> Khomeini Avenue, United Nations Street
> Tehran, Iran

(D.E.147). The Clerk of the Court dispatched the Judgment Papers by DHL on August 27, 2012. (D.E. 151). The Judgment Papers were sent to Iran under Waybill No. 7413183035 and to the MOIS under Waybill No. 7413187703. *Id.*

According to its tracking log, DHL attempted to deliver the Judgment Papers on September 3, 2012. Both Iran and the MOIS refused to accept delivery. *DHL Tracking Logs, dated September 26, 2012, for Waybills 7413183035 and 7413187703*, copies of which are attached hereto as Exhibit 1. Therefore, service by mail pursuant to 28 U.S.C. § 1608(a)(3) and (b)(3)(B) was not successful.

Service by Diplomatic Channels. On October 1, 2012, after the thirty day waiting period required under 28 U.S.C. § 1608(a)(4) expired, the Wultzes timely asked the Clerk of the Court to dispatch the Judgment Papers to the United States Secretary of State for transmittal to the Iranian Defendants through diplomatic channels. (D.E. 152, 153). In conformity with 28 U.S.C. § 1608(a)(4), the Clerk of the Court dispatched two copies of the Judgment Papers for each of the Iranian Defendants to the State Department on October 2, 2012. (D.E. 154). On November 7, 2012, the Judgment Papers for both Iran and the MOIS were transmitted to the Iranian Ministry of Foreign Affairs by the Embassy of Switzerland in Tehran, acting as intermediary for the United States Department of State, under Diplomatic Notes 1086-IE and 1087-IE. *Letter from the Federal Department of Foreign Affairs, Embassy of Switzerland to the Embassy of the United States, dated November 20, 2012,* a copy of which is attached to the *Affidavit of Service*, filed by the United States Department of State on December 20, 2012. (D.E. 155). As is its practice, the Iranian Ministry of Foreign Affairs refused to accept the Judgment Papers. *Id.* In compliance with 28 U.S.C. § 1608(a)(4), the Department of State delivered certified copies of the diplomatic notes to the Clerk of the Court on December 20, 2012. *Id.*

Notwithstanding its refusal to accept the Judgment Papers, transmitting the Judgment Papers to the Iranian Ministry of Foreign Affairs in the manner described by the United States Department of State satisfied the service requirements imposed by 28 U.S.C. § 1608(a)(4) and (b)(3)[1] and by this Court's August 7, 2012 and August 28, 2012 Minute Orders. *See Chabad*, 798 F. Supp. 2d at 268-69.  Accordingly, the Iranian Defendants received the notice statutorily required by 28 U.S.C. § 1610(c).

> 2.  **The Judgment Was Served On Syria In Conformity With 28 U.S.C. § 1608(a)(3) And On The Syrian Ministry Of Defense, Syrian Military Intelligence, and Syrian Air Force Intelligence Directorate In Conformity With 28 U.S.C. 1608(b)(3)(B).**

The Judgment has been properly served on Syria in conformity with 28 U.S.C. § 1608(a)(4) and the Syrian Ministry of Defense, Syrian Military Intelligence, and Syrian Air Force Intelligence Directorate in conformity with 28 U.S.C. § 1608(b)(3)(B).

<u>Service by Special Arrangement</u>.  Service under Sections 1608(a)(1) and (b)(1) was not available.  The Wultzes and the Syrian Defendants do not have any no special arrangements for serving judicial papers.

<u>Service by International Convention</u>.  Service under Sections 1608(a)(2) and (b)(2) was not available.  The Syrian Defendants do not accept service of judicial documents under the terms of any international convention and the Wultzes know of no agents authorized by the

---

[1] Although service on the MOIS through diplomatic channels does not fall specifically within any of the subcategories of service set forth in 28 U.S.C. § 1608(b)(3), Section 1608(b) is "satisfied by technically faulty service that gives adequate notice." *Chabad*, 798 F. Supp. 2d at 267-68.  Substantial compliance "is sufficient." *Id*., at 268.  Here, service through diplomatic channels constitutes substantial compliance with Section 1608(b) for at least two reasons.  First, service through diplomatic channels was the method of service the Court specifically instructed the Wultzes to use if service by mail was unsuccessful.  *See Minute Orders*, dated August 7, 2012 and August 28, 2012.  Second, diplomatic service is a form of service that is "reasonably calculated to give actual notice" to the MOIS.  28 U.S.C. § 1608(b)(3).  *Id*., at 267-68, 269.  Therefore, transmittal of the Judgment Papers to the MOIS, through diplomatic channels, satisfies the notice requirement contained in Section 1610(c) and 1608(b).

7

Syrian Ministry of Defense, Syrian Military Intelligence, or Syrian Air Force Intelligence Directorate to receive service of process on their behalf in the United States.

Service by Mail. In conformity with the August 7, 2012 and August 28, 2012 Minute Orders, the Wultzes timely asked the Clerk of the Court to dispatch two copies of the Judgment Papers to each of the Syrian Defendants at the following address:

> Ministry of Foreign Affairs
> Walid al-Muallem, Minister of Foreign Affairs
> Al-Rachid Street
> Damascus, Syria

(D.E.148). The Clerk of the Court dispatched the Judgment Papers by DHL on August 27, 2012. (D.E. 151). The Judgment Papers were sent to Syria under Waybill No. 7413096891, the Syrian Ministry of Defense under Waybill No. 7413192942, the Syrian Military Intelligence under Waybill No. 7413190470, and the Syrian Air Force Intelligence Directorate under Waybill No. 7413195650. *Id*.

According to its tracking log, DHL delivered the Judgment Papers to each of the Syrian Defendants on September 2, 2012. *DHL Tracking Logs, dated October 31, 2012, for Waybills* 7413096891, 7413192942, 7413190470, and 7413195650, copies of which are attached hereto as Exhibit 2. The DHL tracking logs report that an individual identified as "AKRAM" signed for, and accepted delivery of, each of the four packages containing the Judgment Papers. *Id*.

The Syrian Defendants' acceptance of the Judgment Papers via DHL satisfies the service requirements imposed by 28 U.S.C. § 1608(a)(3) and (b)(3)(B). *Gates v. Syrian Arab Republic*, 646 F.3d 1, 4-5 (D.C. Cir. 2011); *Abur v. Republic of Sudan*, 437 F. Supp. 2d 166, 173 (D. D.C. 2006). Accordingly, the Syrian Defendants received the notice statutorily required by 28 U.S.C. § 1610(c).

> **B. A Reasonable Period Of Time Has Elapsed Since The Default Judgment Was Entered And Since It Was Transmitted To The Iranian Defendants And To The Syrian Defendants.**

As set forth above, the Order and Judgment as well as the Memorandum and Opinion were entered on May 14, 2012. (D.E. 133, 134). The Amended Judgment was entered on June 4, 2012. (D.E. 137). The Judgment Papers were transmitted to the Iranian Defendants through diplomatic channels pursuant to 28 U.S.C. § 1608(a)(4) and (b)(3) on November 7, 2012. (D.E. 155). DHL delivered the Judgment Papers to the Syrian Defendants pursuant to 28 U.S.C. § 1608(a)(3) and (b)(3) on September 2, 2012. Exhibit 2. Thus, the Iranian Defendants have had notice of the Default Judgment for more than two months and the Syrian Defendants for more than four months. Nevertheless, neither the Iranian Defendants nor the Syrian Defendants have satisfied any portion of the $332,068,634 for which they are liable.

Accordingly, for purposes of 28 U.S.C. § 1608(c), the Iranian Defendants and the Syrian Defendants have had a "reasonable period of time" to act after receiving notice of the Default Judgment. In other FSIA cases, this Court has held that six weeks is a reasonable period of time for purposes of satisfying the requirements imposed by Section 1610(c). *See Ned Chartering & Trading, Inc. v. Republic of Pakistan*, 130 F. Supp. 2d 64, 67 (D. D.C. 2001) (six weeks sufficient to satisfy section 1610(c)); *Bayer & Willis, Inc. v. Republic of Gambia*, 283 F. Supp. 2d 1, 3 (D. D.C. 2003) (six weeks sufficient). Other jurisdictions have issued orders permitting plaintiffs to execute on judgments after similar periods of time. *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 2002 WL 32107929, *1-2 (S. D. Tex. 2002) (fifty days sufficient); *Gadsby & Hannah v. Socialist Republic of Romania*, 698 F. Supp. 483, 486 (S.D.N.Y. 1988) (two-months sufficient).

In addition, the particular circumstances of this case demonstrate that, for purposes of Section 1610(c), a "reasonable period of time" has elapsed since the Iranian Defendants and the Syrian Defendants received notice of the Default Judgment.  For example, Iran and its agencies and instrumentalities generally do not respond to complaints or judgments served on them.[2]  *E.g.*, *Murphy*, 778 F. Supp. 2d at 71 (default judgment); *Peterson v. Islamic Republic of Iran*, 627 F.3d 1117, 1121 (9th Cir. 2010) (default judgment); *Ben-Rafael v. Islamic Republic of Iran*, 540 S. Supp. 2d 39, 43 (D. D.C. 2008) (default judgment).  The Syrian Defendants initially appeared in the case, moved to dismiss the complaint, and then defaulted after the Court denied their motion to dismiss.  *Memorandum and Opinion*, dated May 14, 2012, p. 3.  (D.E. 134).  Therefore, the two months that have already elapsed since the Iranian Defendants were served with the Default Judgment and the four months that have elapsed since the Syrian Defendants were served with the Default Judgment constitute more than sufficient time to satisfy the purposes underlying the FSIA and Section 1610(c).

## II.     THE RULE 1610(C) ORDER SHOULD BE ENTERED ON AN EXPEDITED BASIS.

The Wultzes ask the Court to consider this Motion and enter the requested Section 1610(c) Order on an expedited basis so they can immediately attempt to enforce their Default Judgment against a fund of Iranian assets valued at approximately $2,656,943,000.  The funds are presently frozen and subject to enforcement proceedings by other victims of Iranian terrorist activities in *Peterson v. Islamic Republic of Iran*, Case No. 1:10-cv-04518-KBF, pending in the Southern District of New York.

---

[2]  Indeed, as set forth above, the Iranian Ministry of Foreign Affairs refused to accept transmittal of the Judgment Papers from the Swiss Embassy.  (D.E. 155).

10

As this Court has recognized, "the prospect for recovery upon judgments entered in these cases are extremely remote." *In re Islamic Republic of Iran Terrorism Litigation*, 659 F. Supp. 2d 31, 37 (D. D.C. 2009). Plaintiffs, such as the Wultzes, typically "face continuous road blocks and setbacks" as they attempt "hold Iran accountable for unspeakable acts of terrorist violence." *Id*. at 35.

In an effort to reduce the obstacles faced by plaintiffs like the Wultzes, the United States Congress recently passed the Iran Threat Reduction and Syria Human Rights Act of 2012, P.L. 112-158, 126 Stat. 1214 (2012). Section 502 of the Act, specifically provides that the funds currently frozen in the *Enforcement Litigation* are subject to execution or attachment "in order to satisfy any judgment to the extent of any compensatory damages awarded against Iran for damages ... caused by an act of torture, extrajudicial killing ... or the provision of material support or resources for such an act." As a result, a large fund of money is potentially available to satisfy at least a part of the damages this Court awarded to the Wultzes in the Default Judgment.

In light of the funds potentially available in the *Enforcement Litigation*, the Wultzes ask the Court to expedite its review of this Motion and enter an Order pursuant to 28 U.S.C. § 1610(c) so they may proceed to enforce the Default Judgment.

### III.   CONCLUSION.

For the reasons set forth above, all Defendants have received notice of the Default Judgment in accordance with 28 U.S.C. 1608(e) and a reasonable period of time has elapsed following the entry of Default Judgment and the giving of notice to the Defendants. Therefore, the Court should enter an Order pursuant to 28 U.S.C. § 1610(c) authorizing the Wultzes to enforce the Default Judgment.

DATED:  January 14, 2013

                    Respectfully submitted,

/s/ Amy L. Neuhardt
Matthew W. Friedrich (Bar No. 502038)
Amy L. Neuhardt (Bar No. 996791)
Boies, Schiller & Flexner LLP
5301 Wisconsin Avenue, N.W.
Washington, DC 20015
(202) 237-2727

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 14 2013, I caused a copy of the foregoing to be served on all parties through the Court's CM/ECF system.

      /s/ Amy L. Neuhardt
Amy L. Neuhardt (Bar No. 996791)